## Sharcheck *v.* Beaver Run Coal Co., Appellant.

*Workmen's compensation—Loss of use of foot—Act of June 2, 1915, P. L. 742, sections 306 (a) and 306 (c).*

Where a workman is incapacitated for labor by an accident, and is paid the compensation provided by section 306 (a) of the Compensation Act of June 2, 1915, P. L. 742, but subsequently his condition develops into a permanent loss of the use of his foot, without other disability, his employer is entitled to have the original order revoked, and a new one entered fixing the compensation provided by section 306 (c), as for the loss of a member.

Argued May 10, 1922. Appeal, No. 43, Oct. T., 1921, by defendant, from order of C. P. Cambria Co., June T., 1920, No. 595, dismissing appeal from decision of Workmen's Compensation Board, in case of Dave Sharcheck v. Beaver Run Coal Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Appeal from decision of Workmen's Compensation Board, sustaining findings of referee. Before STEPHENS, P. J.

The opinion of the Supreme Court states the facts.

Appeal dismissed. Defendant appealed.

*Error assigned* was order, quoting record.

*Frank P. Martin,* for appellant.

No argument or printed brief for appellee.

OPINION BY MR. JUSTICE KEPHART, June 24, 1922:

Claimant was injured on the right ankle. The X-ray plate indicates a disease of the tibia, with the loss of bone substance. There is a scar on both the inside and outside of the ankle; its general appearance at the pres-

ent time is that of an infection, drained and healed. The bone disintegration had progressed sufficiently to involve the cartilage in the joint; this interferes with motion at the ankle, restricted to the joint. There is an inability to move the foot backwards and forwards, or to the side. When the foot is put down flat the leg must be bent back, and in standing the natural position of the body is slightly altered; this effort is painful, awkward and makes walking difficult. The latter is performed on the ball of the foot with the heel elevated; a shoe with a higher heel will permit claimant to walk with comfort. At the present time crutches are used. "There is absolutely no necessity for a crutch on the left side; there was no injury to the left member, and that leg is weakening from loss of use." Plaintiff probably needed a crutch to walk with the other foot for a time at least, until the members had become strengthened. Some months have elapsed since the opening was made to drain the infected parts; since that time, there has been no discharge or breaking down of bone tissue or the soft parts. "In other words, that region has been healed for months, from which this inference follows: this part has healed and is functioning and in a normal condition."

Part of the testimony is as follows: "Q. Doctor, would you say from your examination that this man has lost the use of his right foot? A. Yes, he has practically lost the use of it for that line of work. He has a permanent deformity, permanent injury there, that would handicap him to a large degree in following his usual occupation as a miner......I think he ought to be at work and gradually break himself to work with that other foot without a cane, with a properly fitted shoe, reinforced with a brace, so as to make absolutely secure that joint from any sudden twist or jar. The injury is confined to the lower end of the tibia. It did not involve the long bones of the foot,—the tarsal bones."

These are the facts we have before us relative to the claim allowed by the board for partial disability. Ap-

pellant claims the injury is a permanent one, resulting in the loss of the foot below the knee, for which compensation should be paid under section 306 (c) of the Compensation Act,—50% of the wages for 150 weeks,—and the testimony undoubtedly sustains this view. The original order was for total disability.

When the injury happened it could be well regarded as one of partial or total disability, if it had the effect of requiring him to desist from labor to effect a cure. The wound was of a temporary character, with a possibility either of improving and entirely healing, or, as it did, of lapsing into a different condition, i. e. permanent, causing the loss of the use of a foot. This condition developed, as appears from the evidence, during the 150-week period, and while compensation was being made under section 306 (a). Claimant was then entitled to an award for the loss of the use of a foot. The first order, however, remained in effect, and, after 150 weeks had elapsed, appellant petitioned for an annulment or termination of this order, as it had the right to do, but the court below continued the referee's order for partial disability, or "until the appellant provides the claimant with such light work as he is able to perform so that then his loss of earning power may be determined." This, under the facts, was error.

When the original award was determined, claimant was incapacitated for labor; consequently appellant could not object to the form of the award; but it is certain the Compensation Act contemplated this disability may cease, or a different condition arise, as in this case. It surely was not the intention to require payment for 500 weeks if disability has ended, or if it is controlled by 306 (c). When an award is made for total disability, and it disappears, no further payment need be made under paragraph 306 (a), even though twenty weeks, more or less, is all that has been paid for. The act reads: "Nothing in this clause shall require the payment of compensation after disability shall cease." But if total disa-

bility—except that mentioned in 306 (c)—continues during the 500 weeks, claimant would be entitled to full compensation during that time.

So, if the injury or wound becomes permanent, causing the loss of the use of a member named in 306 (c)—the foot or ankle has healed and will be permanent in its present condition—for all disability to such member, resulting from such permanent injury, compensation shall be "exclusively" as provided in 306 (c).

No other part of the body was affected by this injury; that the claimant uses crutches or a cane may be the normal result of the loss of the use of the member named. That it is painful to walk or use his foot under certain conditions is likewise within the term "all disability resulting from permanent injury." Had this claimant acted in good faith, he would have been able to work before the end of the 150-week period, and would have been entitled to full compensation, under 306 (c), for the loss of the use of a foot. His own conduct brought on the continuing disability he complains of; the board should be careful to guard against claims arising from malingering in administering the beneficial purposes of the act. If courts do not give effect to the purpose of the law as intended by the legislature, stated in Lente v. Luci, 275 Pa. 217, the compensation in section 306 (c) must be added to the other paragraphs, or we must omit the paragraph from consideration and treat only of paragraphs (a) and (b) ; this was not the purpose of the legislature. By following the spirit of the act, we reach an equitable conclusion, fair to both employer and employee.

For a more extended analysis of the thought here expressed, attention is called to the opinion this day handed down in Lente v. Luci [the preceding case], where this case is properly ruled by the principles there laid down.

The order of the court below is reversed, and it is directed that an order be made allowing compensation under section 306 (c) for the loss of the use of a foot; payments to be made (if not already made) for the period there named; costs to be paid by appellee.