## Kitchen, Appellant, v. Miller Bros. Co. et al.

Argued April 23, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Charles W. Frankel,* for appellant.

*John R. Dierst, Jr.,* for appellee.

Opinion by James, J., October 11, 1934:

On June 24, 1931, appellant, Raymond D. Kitchen, while in the course of his employment, accidentally had his left hand injured by being caught in a saw.

On July 16, 1931, a compensation agreement was entered into between the claimant and the employer and insurance carrier which provided, inter alia: "Describe accident and injury: Claimant, while operating machine, accidentally caught left hand, cutting it severely and resulting in the loss of the index finger," and stipulated that compensation should be paid at the rate of $15 per week for a period of thirty-five weeks

from July 1, 1931. Compensation was paid under this agreement until January 28, 1932, but claimant refused to accept the final check in payment to March 2, 1932, and refused to sign a final receipt.

On April 23d, claimant filed a petition to modify the original agreement and set forth the following: "Employe, in addition to the loss of said index finger, has suffered an industrial loss of the thumb, middle finger and palm of his hand, to the extent that he has suffered a complete industrial loss of the use of his entire left hand." An answer was filed denying the allegations of the petition and averring that claimant had been paid for damages actually existing. Testimony was taken and the referee found as a fact "that claimant has lost the industrial use of his left thumb, in addition to loss of use of left index finger, and that an agreement covering the loss of the left index finger was signed by mistake, claimant being left under the impression that his additional loss would be taken care of, which has been refused by the defendant, and that the petition to modify is in order and must be entertained." Compensation was then awarded for an additional period of sixty weeks to cover the industrial loss of use of claimant's left thumb. Upon appeal, the board sustained the referee but the court of common pleas directed judgment to be entered for the defendant. Claimant appealed.

Claimant testified that in July, 1931, a compensation agreement had been submitted to him for execution, which he refused to sign because it "just indicated this index finger" and did not contain the number of weeks; that another agreement was prepared which was signed by claimant and which he brought to the compensation department at Pittsburgh and was advised by some one, whose identity was not shown, "that it would be all right to sign them; and that the agreement could be opened at any time; re-

viewed by the board." He further testified that the physician for the defendant company had advised him "at the end of thirty-five weeks, we will see about the rest," and that the condition of the hand is the same today as when the agreement was signed. The physician for the defendant company, called by the claimant, testified: "At the present time he has about ten per cent use of his left thumb. There is some motion in the phalangeal joint of the left thumb and very little motion in the metacarpal phalangeal joint of the left thumb. He is able to touch the tips of the middle and ring fingers to the tip of the thumb but is not able to touch the tip of the little finger to the tip of the thumb. He is not able to extend the thumb or separate it from the index finger to any extent or sufficiently to allow him to grasp large objects between the thumb and index finger. He has some slight gripping power between the thumb and index finger for small objects." Under this testimony the referee and the board were fully warranted in finding that claimant had lost the industrial use of his thumb.

From the testimony it clearly appears that claimant was not claiming by reason of any change or development of the original injury. This was clearly set forth in the opinion of the court below as follows: "While the petition for modification in its caption is predicated upon changed disability, this is not an accurate designation. The injury to the index finger and thumb occurred simultaneously and the disability as to both members arose out of one accident and existed at the time the agreement was executed. These are undisputed facts. The phraseology of the petition, however, would lead to the belief that the additional disability eventuated after the agreement had been signed; which is not the fact."

The court below properly held that the petition in this case should be considered as filed under the first

paragraph of Section 413 of the amendment of June 26, 1919, P. L. 642, because there was no proof given that the disability of the injured employe had increased or recurred, as provided by the second paragraph of that section; but it decided that the claimant was barred from resorting to the remedy given by the first paragraph of Section 413, because application to set aside the agreement was not made within thirty-five weeks, saying: "It appears from the record that the claimant was injured June 24, 1931, that the compensation agreement was approved July 27, 1931, and that the petition for modification was filed April 23, 1932, more than thirty-eight weeks after the approval of the agreement. The contemplated period that the compensation agreement had to run was thirty-five weeks, the time fixed by the act for the loss of an index finger. From this record it is obvious that the case at bar falls within the rule recently enunciated in Zupicick v. P. & R. C. & I. Co., [108 Pa. Superior Ct. 165, 164 A. 731]. . . . . . The rule enunciated there is that when the act says of existing agreements that they may be reviewed, modified or set aside at any time, it necessarily intends that such action be taken during the contemplated period the agreement had to run. We hold the limitation fixed in that opinion as to total and partial disability under Sections 306 (a) and 306 (b) has like application to the period of compensation fixed by Section 306 (c). Accordingly the referee could only take cognizance of the petition to modify if it were filed within thirty-five weeks." The court was right in applying the principle of implied limitation to the right to review and modify or set aside a compensation agreement under Section 306 (c), but we think it applied the wrong rule or measure. Where an employe has suffered the permanent loss of the use of a member compensable under Section 306 (c), and by fraud or other improper conduct, etc., a

compensation agreement has been entered into which provides for compensation for a shorter period of time than the injured employe was entitled to under the compensation act, the limitation period within which he must move to set aside the agreement so improperly obtained is not the number of weeks specified in the agreement which he seeks to set aside, but the period fixed by Section 306 (c) for the permanent loss of the member which the claimant actually suffered; for example, in the present case, not 35 weeks, but 95 weeks.

The lower court was, perhaps, influenced in its decision by a statement in our opinion in the Zupicick case that the first paragraph of Section 413 "relates to the review and modification or setting aside of *existing* compensation agreements." On further consideration we are of opinion that, as respects compensation agreements under Section 306 (c), the language used was too broad; that while it may be properly used as respects "open" agreements under Sections 306 (a) and 306 (b), which are for an indefinite term, not to exceed 500 or 300 weeks respectively, and are "existing" until terminated by a final receipt (Furman v. Standard Pressed Steel Co., 111 Pa. Superior Ct. 44, 169 A. 243), which if improperly obtained may be set aside under Section 434 of Act of 1919, supra, or by order of termination by the board, the language should not be applied to agreements under Section 306 (c) which are for a definite period and automatically expire when the definite period is ended although a final receipt is not signed nor the agreement terminated by order of the board. If,—to suppose an extreme case, —the first paragraph of Section 413 should, in all cases, be limited to "existing" agreements, and an employe, who had lost an arm, was induced by the fraud of his employer to sign a compensation agreement, fixing his disability at the loss of a fourth finger, the term of which would be fixed at 15 weeks instead of

the 215 weeks to which he was entitled, unless he moved to have the agreement set aside within the 15 weeks the agreement had to run, he would be without a remedy to set aside the fraud. This could not have been intended by the framers of the act. We hold, rather, that he would be in time if he acted within 215 weeks, the term fixed by Section 306 (c) as the period of compensation for the loss of the member which he actually suffered and for which compensation should have been allowed. We accordingly restrict the language used in our opinion in the Zupicick case, with reference to "existing" agreements, to compensation agreements under Sections 306 (a) and 306 (b).

In this case, the referee found that the claimant signed the agreement by mistake, having been left under the impression that his additional loss would be taken care of. We are unable to find any mistake in this record as the claimant was fully aware that he had also suffered the loss of the use of his thumb and knew that he was entitled to additional compensation for the additional injuries he had received. However, we believe this case to be of the type clearly meant by the language of paragraph 1, wherein it authorizes the review and setting aside of any agreement which is obtained by improper conduct. We are not convinced that the employer's doctor, upon whose recommendation the agreement was signed, was animated by any improper motive. In fact, his subsequent conduct in testifying for claimant before the referee establishes the contrary but in his capacity as physician for the employer, the claimant had the right to rely upon him. His inducing a patient of his employer to sign an agreement of compensation, when he knew the agreement did not contain a true and correct statement of the injuries from which claimant was suffering, was highly improper. It was such improper conduct as would warrant the board in setting the agreement

aside, as it was upon the strength of the recommendation of the physician that the claimant signed the agreement. We are convinced that the referee was justified in entering his order setting aside the agreement, and that the court below erred in holding that the claimant was obliged to file his petition to set it aside within thirty-five weeks from its effective date.

The judgment of the lower court is reversed, and the record is remitted with direction to enter a judgment in favor of the claimant for the amount of the award with the proper allowance for interest as provided by statute.