Gardner *v.* Pressed Steel Car Company et al., Appellants.

594 

Argued April 14, 1936. 

██ Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ. 

*James J. Burns, Jr.,* of *Willmann, Burns & Sack,* for appellant.

*Murray J. Jordan* and *Fred J. Jordan,* for appellee.

OPINION BY CUNNINGHAM, J., July 10, 1936:
Claimant, in the course of his employment with

Pressed Steel Car Company, received an accidental injury to his left eye on May 27, 1929, when a chain with which he was working broke and a piece of it struck his glasses. An open agreement was entered into under date of July 16, 1929, in which the injury was described as "severe laceration of cornea and iris, also traumatic cataract of left eye." The agreement provided for the payment of compensation at the rate of $15 per week from June 3, 1929, and payments were made thereunder for a period of thirteen weeks. By September 2, 1929, the injury had developed into the permanent loss of the use of the eye, and under date of September 19th a supplemental agreement was executed providing for payment of compensation at the same rate for an additional period of 112 weeks, thereby covering the definite period of 125 weeks fixed by section 306 (c) of our Workmen's Compensation Act of June 2, 1915, P. L. 736, and its amendments for the loss of an eye. This period expired as of October 28, 1931. During its running, namely, on March 14, 1930, the board commuted the payments for the 84 weeks then remaining.

On March 19, 1930, claimant executed a "Final Settlement Receipt" reading: "Received of Pressed Steel Car Company the sum of One Thousand two hundred and eleven dollars and six cents ($1211.06), being the final payment of compensation due me under the Workmen's Compensation Law for all injuries received by me on or about the 27th day of May, 1929, while in the employ of Pressed Steel Car Company making in all, with the payments heretofore received by me, the total sum of One Thousand eight hundred and twenty-six dollars and six cts. ($1826.06), covering a period of 125 weeks."

On June 7, 1932, more than seven months after the expiration of the definite period of 125 weeks, the claimant filed the petition which gave rise to the con-

troversy in this case. It was captioned, "Petition for Review of Compensation Agreement" and reference was made to section 413 (Act of June 26, 1919, P. L. 642, 661, as amended by Act of April 13, 1927, P. L. 186, 194). The material averments read: "And as the ground of this petition I allege that the said agreement was based upon the hereinafter stated mistake. At the time of the signing of the final receipt, I was under the impression that I had recovered, that my disability was limited to the loss of my eye. And in support of the above allegations I state the following facts: This was a mistaken belief, as I suffered then and suffer now, disability which has increased so that at the present time I am totally disabled from performing any gainful employment, and all as the result of the accident referred to."

The employer answered, denying the averments of the petition, and the matter was referred to a referee who conducted three hearings at which voluminous testimony was taken and various exhibits, including hospital records, admitted.

The fourth finding of fact made by the referee reads: "That the said claimant is totally disabled by reason of a neurological or psychiatric condition known as dementia praecox; that the said dementia praecox existed in a mild, latent form previous to the said injury of May 27, 1929; that the said injury of May 27, 1929, with its resultant effects, so aggravated, or as Dr. Weinberg testified, 'brought down his dementia to the front,' that this man is unable to work on account of his mental condition; that in accordance with the testimony of Dr. Weinberg, called on behalf of the claimant, which was in a large degree corroborated by the testimony of Dr. Mayer, called on behalf of the defendant, your referee finds as a fact that the said claimant is totally disabled from engaging in any gainful employment, [and] that said condition is permanent."

One of his conclusions of law was: "That the said claimant, being totally and permanently disabled as a result of the said injury sustained May 27, 1929, and the said original agreement and supplemental agreement not having provided for the payment of compensation in accordance with the extent and measure of the said claimant's disability, he is entitled to have the said agreements, original and supplemental, modified to provide for the payment of compensation for 500 weeks from [June] 3, 1929 at the rate of $15.00 per week, the defendant to take credit for 125 weeks already paid."

An award of compensation was accordingly made "at the rate of $15.00 per week, beginning June 3, 1929, to continue until the expiration of the 500 week period provided by the Workmen's Compensation Act, defendant to take credit for 125 weeks already paid," etc.

Upon the employer's appeal to it, the board assumed that the petition was based upon an alleged increase in disability within the meaning of the second paragraph of section 413, and, as it had not been filed during the "definite period" specified in the supplemental agreement, the award of the referee was set aside upon this technical ground and the petition dismissed.

Claimant then appealed to the common pleas and that tribunal reversed the board upon that question of law and entered judgment upon the award, liquidating the same "as of April 3, 1935" in the amount of $2,963.83, as the amount of compensation and interest which had accrued since the seventh day after the accident, less a credit for 125 weeks theretofore paid.

This appeal is from that judgment. The assignments do not question the sufficiency of the evidence to sustain the referee's above quoted fourth finding of fact, relative to the latent mental condition of the claimant and its aggravation by the accident; they relate rather to his finding that the agreements were executed "under

a mistake of fact as to the nature and extent of his (claimant's) injuries and their resultant effects," and to the conclusion of the court below that consideration of the petition was not barred by any provision of the statute.

It seems to us that the difficulties which have provoked so much debate between the experienced counsel on both sides are more apparent than real.

The matter of prime importance, we think, is to ascertain and keep in mind the nature of the disability for which claimant is seeking additional compensation.

His petition should be read in the light of the testimony, regardless of its caption and section reference. We have repeatedly said, in endeavoring to administer the statute in accordance with its intent and spirit, that if a petition states a legal ground for relief we will consider it as filed under the section authorizing the granting of the relief sought: Bucher v. Kapp Bros. et al., 110 Pa. Superior Ct. 65, 167 A. 652. In that case we also repeated that Sections 413, above cited, and 434 (Act of June 26, 1919, P. L. 642, 669) provide separate and distinct forms of relief—the former relating to agreements or awards, and the latter exclusively to final receipts. As there had been no prior award in this case, we are concerned only with the agreements and the final receipt.

We are satisfied, from our examination of the testimony, that there was sufficient competent evidence from which the referee could reasonably find that claimant prior to, and at the time of, the accident had a latent "neurological or psychiatric condition, known as dementia praecox," which was so aggravated by the accident that it became active and caused the total disability existing at the date of the award.

In our opinion, the disability upon which the petition was based is a disability separate, apart and dis-

tinct from that incident to the permanent injury—the loss of the eye.

In Lente v. Luci, 275 Pa. 217, 119 A. 132, our Supreme Court said: "Compensation may be made for an injury to, destruction or affection of, other organs or parts of the body produced by the permanent injury, causing a disability separate, apart and distinct from that mentioned in paragraph (c). This may be under paragraph (b), or, if total disability, under paragraph (a), as, for illustration, *a latent tubercular condition* in another part of the body becoming active through the permanent injury, etc." (Italics supplied) In the same case it was explained that the amounts fixed by section 306 (c) for permanent injuries are to be paid "without considering, but including, all incapacity to labor that may be connected therewith, whether such incapacity be total, partial or no incapacity at all."

Under the medical testimony upon this record, the other organ injured by the accident was the brain, and particularly the left lobe. Claimant has been paid the amount fixed by the statute for the loss of his eye, but it is clear, under the testimony, that his present incapacity to engage in any employment is not due to the loss of that organ.

That such a disability as here exists is compensable under, and within the limitations of, the statute cannot now be questioned. If it is total and manifests itself within the period of 500 weeks following the accident, the liability of the employer attaches unless the claimant has estopped himself in some way from asserting his claim. Here, the final receipt, which under the provisions of the statute is "prima facie evidence of the termination of the employer's liability" and upon its face states it covers "all injuries received" in the accident, is the obstacle which stands in claimant's path.

The physical and mental condition which now disables the claimant is not a recurrence or increase, with-

in the contemplation of the second paragraph of section 413, of the disability referred to in, and intended to be covered by, the original agreement. Bucher v. Kapp Bros. et al., supra, is an illustration of the kind of a case to which that section and paragraph are applicable. There, the open agreement provided compensation for the disability arising from a bruised and squeezed right thigh. The injury was inflicted in September, 1928. In December of that year the employee executed a final receipt and returned to work. By February, 1931, a disabling osteo-myelitis, or inflammation of the marrow, of his right femur had developed and reinstatement of the agreement was sought upon the ground that the employee's original disability had recurred and increased. His petition was dismissed because it had not been filed within one year after the date of the last payment of compensation. See also a discussion of the character of disability intended to be included under the second paragraph of section 413 in Borneman v. Frick Coke Co., 122 Pa. Superior Ct. 391, 186 A. 223.

Nor is this a case of the loss of a member which was not, but should have been, included in an agreement drawn under 306 (c), as was Kitchen v. Miller Bros. Co. et al., 115 Pa. Superior Ct. 141, 174 A. 919.

As we read this record, the claimant is not seeking, nor is he entitled to, relief under either paragraph of section 413, and the board, therefore, erred in holding his petition was barred by the time limitations therein contained. Nor are we particularly concerned with the circumstances under which the supplemental agreement was executed. The medical testimony indicates that the separate and distinct disability for which compensation is now sought developed during the running of the period of 125 weeks specified in that agreement. As indicated, the final receipt is the bar which claimant must meet and overthrow by his evidence.

The legislature has provided, in section 434, that such a receipt may, "at any time," [within the applicable 300 or 500 weeks' period] be set aside, "if it be proved," inter alia, that it was "founded upon mistake of law or of fact."

The petition in this case, as we regard it, is, in substance and effect, a petition to set aside that receipt upon the ground of a mutual mistake of fact, existing when it was executed, viz., that the disability of claimant was, in the language of the petition, "limited to the loss of [his] eye."

Lapse of time and subsequent developments demonstrated it was not so limited, and that claimant then had, in fact, a disability, arising out of the effects of the accident upon his brain, which was separate, apart and distinct from the disability occasioned by the loss of the eye itself.

It is not conceivable that claimant would have signed the receipt if he had known his true physical and mental condition. The testimony of the medical expert is that he was not competent at that time to "safeguard his interests."

We may also assume, in favor of the honesty and integrity of the employer, that if it had known of the brain injury and all the other material facts it would not have taken such a receipt from its employee.

It should be borne in mind that the original agreement into which the employer entered with its employee had a potential life of 500 weeks under 306 (a). When it became apparent that he had lost the use of his eye, it was proper enough to enter into a contract to pay him for 125 weeks under 306 (c) for that permanent injury, but that did not end the employer's liability in the event of the development of a disability separate and distinct from that covered by the supplemental contract.

We are not here dealing with a mere mistaken be-

lief that a disability, compensable under 306 (a) or 306 (b) and covered by an original agreement, had terminated, as is frequently the case, but with a complete lack of knowledge by both parties of the extent of the injuries inflicted by the accident.

Our conclusion, upon a review of the entire record, is that the referee and court below were justified in holding that claimant was entitled to an award of additional compensation under 306 (a), not upon all the reasons stated by them, but upon the ground that it was sufficiently shown that the final receipt was founded upon a mutual mistake of fact.

Neither the award, nor the judgment thereon, is in proper form. The award should not have been made "to continue [from June 3, 1929] to the expiration of the 500 week period." Death or a change in disability may occur before that period has expired.

In Graham v. Hillman C. & Coke Co., 122 Pa. Superior Ct. 579, 186 A. 400, we have considered fully the provisions of the statute relating to the manner in which courts of common pleas should enter judgment upon affirmed awards, and in Petrulo v. O'Herron Co. et al., 122 Pa. Superior Ct. 163, 186 A. 397, the principles governing the calculation of interest have been announced.

The award of additional compensation in the present case is under 306(a) at the maximum weekly rate, but claimant has heretofore been paid compensation at that rate for 125 weeks, under 306(c), for the loss of the use of his eye, or the equivalent, as commuted, of $1,875. No interest prior to October 28, 1931,—the expiration of the 125 weeks' period—will be involved.

Under the principles stated in the Graham and Petrulo cases, the judgment in this case should have been entered for $6,500, subject to a credit of $1,875, and subject to termination in the event of the death of claimant or if his disability should cease, or modifi-

cation if it should decrease, and also subject to be liquidated from time to time for the aggregate of instalments then due, with interest thereon.

When the first payment is made under the judgment the claimant will be entitled to receive the aggregate of instalments which have accrued since October 28, 1931, together with simple interest upon each from the date upon which it should have been paid, calculated in the manner prescribed in Petrulo v. O'Herron Co. et al., supra.

Judgment modified and as modified affirmed.