## Zuro, Appellant, v. McClintic Marshall Company.

144

Argued October 12, 1937.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*George H. Detweiler,* with him *James A. Somers,* for
appellant.

*C. Brewster Rhoads,* with him *Laurence H. Eldredge,*
of *Montgomery & McCracken,* for appellee.

OPINION BY BALDRIGE, J., November 17, 1937:

This compensation case has a history extending over
eight years. It is unnecessary to refer to the various
petitions filed, hearings had, and agreements executed.
We will confine our review to a few of the essential facts
and some of the proceedings.

The claimant, a structural steel worker, on the 30th

of April, 1929, sustained a fracture of the neck of the left femur. Shortly thereafter, an agreement providing for compensation was entered into. On June 27, 1930, claimant petitioned to modify the agreement, and defendant, on September 3, 1930, petitioned to terminate it. After hearings were had, but before any action was taken by the referee, a supplemental agreement was entered into, whereby defendant agreed to pay claimant compensation for the loss of the use of the left leg, at the rate of $15 per week, for 215 weeks.

On October 8, 1932, claimant petitioned to modify the supplemental agreement, alleging that his disability had increased and "he is now totally disabled." This petition was dismissed by Referee Just. On June 6, 1933, claimant again petitioned for modification, alleging permanent total disability. The referee denied the prayer, and claimant appealed to the board, and it affirmed the order of the referee. On April 28, 1934, claimant filed another petition for a rehearing, which was granted. Referee Casey, to whom the application was referred, filed an order, February 27, 1936, dismissing the petition, holding that claimant's disability, as the result of the accident, does not extend beyond the loss of the use of his left leg and that he is not suffering a permanent total disability. The board sustained the referee, and thereupon an appeal followed to the court of common pleas, which affirmed the board. This appeal followed.

Our duty is confined to ascertaining whether there is any legally competent evidence to support the findings of the compensation authorities. If so, the judgment of the court below must be affirmed. As the claimant is seeking to modify the agreement, he must assume the burden of establishing the allegations upon which he relies.

It appears in this record that at the first hearing, which was before Referee Ditter on October 10, 1930,

Dr. Brooke testified that claimant has a definite limp but that he walks fairly well and is able to stand and bear weight on his left foot; that, in his judgment, he is not able to do heavy, laborious work, but he did not regard him as being totally disabled. Dr. Martin, claimant's witness, testified that, in the main, he agreed with Dr. Brooke's conclusion. He stated further that while there are limitations to claimant's ability to work, "the man should do something;" that although he can not remain on his feet for several hours without rest, some walking would be beneficial to him. Dr. Blakeslee testified that the claimant can do such work as the cleaning of bricks, tending one or two boilers which involves handling of coal and ashes, etc.; that, in his judgment, claimant is not totally disabled, and fixed an earning power of from $15 to $20 a week.

At the hearing on September 21, 1933, before Referee Just, Dr. Jones, called by the claimant, testified that he had made an examination of him in 1932 and 1933 and found that while he walks with a decided limp, it shows a "fair degree of stabilization;" that, in his opinion, claimant is totally disabled to do industrial work, but he qualified this statement by saying he is not able to do heavy, industrial work. On cross-examination he stated that claimant's injury is confined solely to his left leg and no other part of his body is involved, but that the loss of the use of the leg affects his general capacity to work. Dr. Blakeslee, also called at this hearing, stated that he agreed substantially with the testimony of Dr. Jones. Referee Just found that Dr. Jones' tesimony corroborated that of Dr. Brooke's at the prior hearing, and that, as a result of this accident, claimant is suffering no disability beyond the loss of the use of the leg. A rehearing was granted by the board on the allegation of the claimant that the referee misunderstood the testimony of Dr. Jones as he did not mean to give the impression the injury did not

extend beyond the anatomical limits of the left leg. Dr. Jones was reexamined by Referee Casey, to whom the case was remanded, and he then stated that the point he was trying to bring out at the former hearing was that the disability, in his estimation, was entirely confined to the left lower extremity due to the fracture of the neck of the left femur, which he considered a portion of the "lower extremity;" that by his use of the term "disabled," he had in mind simply the "lower extremity" and was not referring to the general physical condition of the man. He also stated that neither the head of the bone nor the acetabulum was involved. Any uncertainty that may have existed as to this witness' opinion was thus clarified. The referee found, as above stated, that claimant's disability, as the result of the accident, does not extend beyond the loss of the use of his leg and that he is not suffering a permanent total disability.

It appears from claimant's testimony that while he had daily employment consisting of light work during three summers, he suffers much pain, both legs are involved as they swell up, and he is unable to walk to any extent or stand on his feet longer than an hour.

But we cannot say, in view of the portion of the testimony to which we have referred, that there is no competent evidence to support the finding of the compensation authorities. The extent of claimant's injuries and his ability to work were factual questions for their consideration. As we have frequently said, we do not interfere with the conclusions of fact-finding tribunals if there is any legally competent evidence to support the findings and if the law has been properly applied: *Melini v. Saltsburg C. Mining Co. et al.,* 119 Pa. Superior Ct. 356, 358, 181 A. 330.

If we were to assume that as a result of the loss of the use of claimant's left leg he is unable to obtain employment, he would not be entitled to additional com-

pensation for a permanent total disability unless the injury extended beyond the leg. In *Lente v. Luci,* 275 Pa. 217, 220, 119 A. 132, the court points out that the legislature has definitely fixed in section 306(c) of the Workmen's Compensation Act, approved June 2, 1915, P. L. 736 (77 PS §513), the amount to be paid for the loss of a hand, arm, foot, leg, or eye, which includes all incapacity to labor that may be connected therewith, whether it be total, partial, or no incapacity at all. *Gardner v. Pressed Steel Car Co. et al.,* 122 Pa. Superior Ct. 592, 186 A. 410, is not in conflict with, nor does it in any way attempt to modify, the previous trend of decisions, as argued by the appellant. There, not only the loss of an eye was sustained, but claimant's brain was also involved. Here, it was found on sufficient evidence that the area beyond the leg was not affected.

The claimant very earnestly argues that *Clark v. Clearfield Opera House Co. et al.,* 275 Pa. 244, 119 A. 136; *Toth v. Pitts. Ter. Coal Corp.,* 110 Pa. Superior Ct. 163, 167 A. 438; and *Cole v. Stewart et al.,* 111 Pa. Superior Ct. 561, 170 A. 311, control this case. The very important distinction existing between those cases and this one is that in each of the former the compensation authorities found upon sufficient competent evidence that the injury extended beyond the loss of the use of the leg and that there was a permanent total disability. That left no alternative to the court but to sustain the findings. If we had such a record in this case, the result would be the same as there.

Judgment is affirmed.