Rednock, Appellant, *v.* Westmoreland Coal Company.

Argued April 18, 1938.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Barney Phillips,* with him *John J. Kennedy, J. I.
Simon* and *Adam B. Shaffer* for appellant.

*R. Kirk McConnell,* with him *R. Kay Portser,* of
*Gaither, Portser & McConnell,* for appellee.

OPINION BY CUNNINGHAM, J., June 29, 1938:

While in the course of his employment with the de-
fendant coal company on February 11, 1925, the claim-
ant in this workmen's compensation case met with an
accident, necessitating the amputation of his right leg
above the knee. In compliance with a compensation
agreement, drawn under the provisions of section 306 (c)
of the Workmen's Compensation Act of June 2, 1915,
P. L. 736, as amended April 13, 1927, P. L. 186, 77 PS
§513, he was paid $12 per week for the definite term
of 215 weeks therein specified for the loss of his leg.

This period expired April 6, 1929, but the claimant declined to give a final receipt.

More than twenty-one months thereafter claimant endeavored to obtain additional compensation upon the theory that other organs and parts of his body had become so injuriously affected (within the meaning of *Lente v. Luci,* 275 Pa. 217, 119 A. 132) by reason of the amputation of his leg as to cause a compensable disability separate, apart and distinct, from the disability normally incident to the loss of a leg. It was the filing with the board on January 21, 1931, of a petition praying that the terminated original agreement, dated March 2, 1925, be reviewed, reinstated, and modified into an agreement for the payment of total disability, under paragraph (a) of section 306, that originated the present controversy.

The ground upon which additional compensation was sought was thus stated: "At the time I was injured on February 11, 1925, the sciatic nerve was injured and the doctor has operated on the back to relieve the condition but [has] failed to help me. ...... At the time I signed the compensation agreement for the loss of the leg I did not know the extent of my disability; because of this, I have refused to sign final receipt, and would pray your honorable board to reinstate the compensation for total disability." These averments of an increase in disability subsequent to the date of the agreement brought the petition under section 413 of the statute, as amended April 13, 1927, P. L. 186, 77 PS §§771-772.

The answer of the employer was twofold: (a) lack of jurisdiction in the board to entertain the petition because it had not been filed during the definite period of 215 weeks; and (b) a denial that any other member or organ of claimant's body had been injured, or affected, as a result of the amputation of his leg. After a number of hearings, beginning February 20, 1931, and

concluding July 26, 1933, the compensation authorities sustained both defenses and dismissed the petition; upon claimant's appeal to the common pleas his exceptions were dismissed and judgment informally entered for the employer; this appeal, which we permitted to be presented in forma pauperis, is by the claimant from that judgment.

The first question involved is whether the board had jurisdiction to entertain, and conduct hearings under, the petition; if not, the merits of the case become immaterial. One of the grounds upon which the compensation authorities finally held that the first paragraph of section 413, 77 PS §771, (providing for the review and modification of a compensation agreement, "at any time [within the general limitations of the statute]," upon proof that it had been "procured by the fraud, coercion, or other improper conduct of a party, or was founded upon a mistake of law or of fact") did not apply to this case, was that the paragraph related only to *"existing agreements."* In support of that conclusion they cited *Zupicick v. P. & R. C. & I. Co.,* 108 Pa. Superior Ct. 165, 164 A. 731, decided January 25, 1933. In order to avoid any possible confusion, it should be noted that subsequent to the disposition of the present case in the court below we modified our decision in the Zupicick case by an opinion filed October 11, 1934, in *Kitchen v. Miller Bros. Co. et al.,* 115 Pa. Superior Ct. 141, 174 A. 919, to the extent that we limited what was said in the Zupicick case, relative to "existing" agreements, to agreements for total or partial disability under paragraphs (a) or (b) of section 306, 77 PS §§511-512. As the agreement now under consideration was drawn under paragraph (c) of that section, we would not exclude it from the operation of the first paragraph of section 413, *solely* upon the ground that when the petition was filed the agreement sought to be

reviewed was not in existence, but had terminated by its own terms on April 6, 1929.

There is, however, another ground upon which we now hold that the first paragraph of section 413 is not applicable here. The only basis specified in that para-graph for the review and modification of an agreement is that it was procured by fraud, coercion, or other improper conduct of a party, or was founded upon a mistake of law or of fact. There is no averment in this case of any improper conduct upon the part of the employer in procuring the agreement, nor is there any averment or evidence that it was founded upon any mistake existing at the time of its execution.

The referee made the following specific finding upon that question: "Claimant is American born and appears to be above the average in intelligence, and we find that prior to entering into his agreement for the definite period of time he discussed the matter with an adjuster for the bureau of compensation and that the matter of signing the agreement and his right under the compensation law was fully explained to him at that time, and that he did not sign the agreement until some time later and after he had deliberated as to the advisability of signing the agreement, and that when he affixed his signature to the agreement he knew full well what he was doing and that the agreement merely provided for compensation for the loss of a leg."

This finding distinguishes the present case from that of *Kitchen v. Miller Bros. Co. et al.,* supra. We agree with the court below that the question whether appellant's petition was filed in time is to be determined under the second paragraph of section 413. That paragraph originally, and as amended June 26, 1919, P. L. 642, provided, inter alia, for the review and modification, "at any time [within the respective maximum periods]," of agreements and awards, whether existing or termi-

nated, upon proof that the disability of an injured employee had increased.

By the further amendment of April 13, 1927, P. L. 186, 77 PS §772, the phrase "at any time" was modified and limited by a proviso to the effect that, except in the case of eye injuries, an agreement or an award under paragraph (a) or (b) of section 306 can be reviewed, modified, or reinstated, only upon a petition therefor "filed with the board within one year after the date of the last payment of compensation," and, with respect to agreements or awards under paragraph (c) of that section, only during the "definite period" fixed by the statute for the running of the agreement or award.

The contention of counsel for appellant, that as the accident to his client occurred prior to the approval of the amendment the limitation therein provided does not apply, is squarely ruled against him by the decision of this court in *DeJoseph v. Standard Steel Car Co. et al.,* 99 Pa. Superior Ct. 497, 504. Nothing can be added to what was there said, except to remark that in the case at bar the appellant had approximately two years after the approval of the amendment within which to file his petition for a review of the agreement. We are of opinion that the board had no jurisdiction to entertain the petition of appellant filed January 21, 1931, because its consideration was barred by the limitation of the amendment of 1927.

While not material to the disposition of the appeal, it may be pointed out that the enforcement of the limitation works no injustice to appellant. Another conclusion of the compensation authorities was that the evidence warrants "a finding of fact that claimant's disability ...... is confined to the loss of his leg." This finding is supported by the testimony of appellant's own witnesses, Drs. William Taylor, R. E. L. McCormick, and J. F. Long, and also by that of Dr.

William H. Mayer, the impartial expert appointed by the referee. Dr. Taylor, who amputated the appellant's leg, when examined relative to appellant's contention that other organs had been affected as a result of the amputation, stated: "Q. Well from your examination what would you say as to your opinion about his complaint? A. I think it's entirely symptomatic; there is no evidence by physical examination or any other means to justify the complaint in the examination of the stump or its tissues; it's entirely a matter of his own imagination in the matter; I don't think it has any justification in any pathology. I think his condition is exactly the same as any other man's where there has been an amputation through the femur or through the thigh at that point. It's quite true that about one in thirty cases of amputation through the thigh have a neuroma develop, but not more than that." The witness explained that a neuroma is a tumor at the end of a severed nerve due to the operation, and testified further that the neuroma was removed and did not return. An excerpt from the testimony of Dr. Frazier reads: "Q. What was the man's physical condition outside of the stump where the amputation had taken place? A. As far as I know our examination was entirely negative except for the loss of his limb."

The referee's expert, in discussing the complaints of appellant relative to pains in other parts of his body, said: "Insofar as pain, no one can say just what this man's distress is; but that this distress is due to his accident and amputated limb, I do not believe."

Even if the petition had been filed in time, there was no competent evidence in the case which would sustain a finding that, within the meaning of the decision of our Supreme Court in *Lente v. Luci*, supra, any portion of the physical structure of appellant's body, apart from his right leg, had been injuriously affected in any way by the amputation of that member. The only conclu-

sion which can reasonably be drawn from the medical testimony is that appellant has no disability, "separate, apart and distinct, from that mentioned in paragraph (c)," which would entitle him to additional compensation under the other paragraphs of section 306. What was said by this court upon the merits of the case of *DeJoseph v. Standard Steel Car Co.*, supra, is equally applicable here. None of the assignments of error can be sustained.

Judgment affirmed.