Opinion by
 

 Baldrige, J.,
 

 The question before us in this workmen’s compensation case is whether there was sufficient legally competent evidence to support the finding that the claimant, on November 22, 1929, the date a supplemental agreement was executed, was suffering a disability separate and distinct from the loss of the use of his foot, known to exist by the defendant.
 

 The claimant sustained an accident on September 20, 1927, resulting in a broken right leg and seriously injuring his right foot and ankle. A compensation agreement was entered into for total disability. This was followed by a supplemental agreement carrying compensation for 150 weeks for the loss of the use of the right foot, as provided in Section 306(c) of the Workmen’s Compensation Act of June 2, 1915, P. L. 736 (77 PS §513), with allowance of a credit for 112 weeks previously paid.
 

 On January 30, 1930, upon the termination of the 150-week period, claimant signed a final receipt. On September 23, 1935, he filed a petition to set aside this receipt. At the hearing held April 23, 1936, the referee stated that he would consider the claimant’s petition “as a petition to review,” under Section 413 of the Workmen’s Compensation Act, as amended June 26,
 
 *232
 
 1919, P. L. 642, §6 (77 PS §771). No exception was taken to this action. The relief sought was considered accordingly under the first paragraph of that section, which applies only to agreements or awards. We have frequently held that if a claimant establishes the right to relief, we will consider the petition as filed under the appropriate sections:
 
 Bucher v. Kapp Bros. et al.,
 
 110 Pa. Superior Ct. 65, 167 A. 652;
 
 Gardner v. Pressed Steel Car Co. et al.,
 
 122 Pa. Superior Ct. 592, 186 A. 410.
 

 Dr. Mock was called as a witness by the claimant at this hearing, and testified that he had assisted Dr. McCullough, now deceased, who had been claimant’s physician, in treating claimant from March 10, 1935, until May 30th. During this period claimant had a foul discharge from a running sore due to a marked osteomyelitis of the foot, and his “general health was very bad.” Upon the doctor’s recommendation, the foot was amputated below the knee.
 

 The claimant testified as follows:
 

 “Q. Is the stump healed up yet? A. No, sir — the end is not healed — it did heal up but after it bealed, about four or five weeks after it bealed and he lanced it day before yesterday and he lanced it about three weeks ago, it bealed on both sides, it is getting all right but day before yesterday this side bealed and bothered me and he lanced it day before yesterday on this side and it is awful sore and swells up. So far as the stump underneath, that is healed up.
 

 “Q. How long did you have that running sore in your foot before you had it taken off? A. I had it from the time I got hurt, I might say it was always running.”
 

 He stated that by reason of his condition he has not been able to work except for brief periods.
 

 The referee found in his tenth finding of fact: “That at the present time the claimant’s stump is afflicted by
 
 *233
 
 osteomyelitis to such an extent that the infection has considerably affected the claimant’s health in general and the claimant is at present in need of another amputation to remove the infection and improve his health.” Compensation was awarded at the rate of $12 per week, beginning May 10, 1935.
 

 The board, on appeal, concluded that the proof showed that the claimant, from the date of the accident, has been either partially or totally disabled as a direct result of his injury; that if he is entitled to relief it would be from January 24, 1930, and not from May 10,1935, as the referee found; that “in the present state of the record it is not clear whether this disability was due to impairment of other parts of the body than the foot for which he has been paid.” The findings of fact, conclusions of law, and award were set aside, and the record remanded to the referee to ascertain claimant’s condition on November 22, 1929, the date the supplemental agreement was executed.
 

 An additional hearing was had, at which Dr. Ballantyne and Dr. Heberling testified. The former’s testimony was confined to claimant’s condition prior to the date of the supplemental agreement, but not at or about the time of the execution thereof. Dr. Heberling testified that the Globe Indemnity Company sent the claimant to him on December 31, 1928; that after an X-ray examination claimant was admitted to the Allegheny General Hospital, and on January 21, 1929, an operation was performed on his foot. Dr. Heberling attended him at his home from time to time during the summer and hospitalized him again the following September. He continued to treat the claimant until the latter part of 1929. This witness stated that when he first saw claimant he had an open draining wound from an infected foot and that osteomyelitis had set in; that this bone infection affected claimant’s general condition; that “any patient with osteomyelitis anywhere
 
 *234
 
 has a certain lowering of his general resistance, evidenced by loss of weight, certain amount of toxemia, anemia and that sort of thing.”
 

 The board, in a well-considered opinion, concluded upon sufficient legally competent evidence that while the osteomyelitis itself did not extend beyond the lower part of the leg, the results thereof affected the claimant’s general physical condition, and affirmed the findings of fact and conclusions of law of the referee. The award was sustained by the court of common pleas.
 

 The evidence clearly discloses that the infection affected other portions of claimant’s physical structure, separate and distinct from the foot, not normally following its amputation:
 
 Lente v. Luci,
 
 275 Pa. 217, 119 A. 132;
 
 Clark v. Clearfield Opera House,
 
 275 Pa. 244, 119 A. 136. These additional injuries cannot be solely attributed to the actual loss of the foot, and are compensable under the facts presented.
 

 That brings us to the question whether the claimant proved that the “agreement was procured by the fraud, coercion, or other improper conduct of a party, or was founded upon a mistake of law or of fact.” He showed he was suffering from osteomyelitis at the time the supplemental agreement was executed and that that fact was known to the attending physician who was acting on behalf of the defendant. We held in
 
 Kitchen v. Miller Bros. Co. et al.,
 
 115 Pa. Superior Ct. 141, 174 A. 919, that if the claimant is induced by the employer’s physician to sign a compensation agreement which does not contain a true and correct statement of his injuries, there is such improper conduct within the meaning of paragraph 1, section 413, supra, as to justify the setting aside of the agreement. It is the duty of an employer to include in such an agreement all the disability from which the employee was suffering at the time and of which it had knowledge. We said in
 
 Tinsman v. Jones & Laughlin Steel Corp.,
 
 118 Pa. Su
 
 *235
 
 perior Ct. 516, 524, 180 A. 175, that “it would be a fraud on the employee, unless the latter was fully informed of all the circumstances and signed the agreement with full knowledge that he was thereby depriving himself of his legal rights. No such full and explicit knowledge on the claimant’s part has been shown in this case......This does not appear to be the case of parties! deliberately electing to omit this additional disability from a compensation agreement, but rather its omission because of a mutual, mistaken belief that it was not permanent but temporary and would clear up within the period of compensation fixed in the agreement.” See, also,
 
 Palino v. Hazle Brook Coal Co.,
 
 112 Pa. Superior Ct. 15, 171 A. 82;
 
 Romesburg v. Gallatin Market et al.,
 
 114 Pa. Superior Ct. 388, 174 A. 805.
 

 This agreement, limiting compensation to the actual loss of the foot, did not contain a correct statement of the true extent of claimant’s injuries, known to defendant but of which claimant was not fully informed. A mistake of fact existed therefore at the time of its execution. Having established upon sufficient evidence that the agreement was based upon a mistake of fact, the claimant was not too late in seeking relief, as an agreement may be reviewed any time during the period it would have run if it had been correctly drawn, which, in this case, is 500 weeks from the date of the accident as a permanent disability exists:
 
 Zupicick v. P. & R. C. & I. Co.,
 
 108 Pa. Superior Ct. 165, 172, 164 A. 731.
 

 We find no reason to disturb the findings and conclusions of the board and the granting of the award.
 

 Judgment affirmed.