Flood *v.* Logan Iron & Steel Company et al.,
Appellants.

102

Argued March 16, 1939.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and
HIRT, JJ.

*Louis Wagner,* with him *Thomas J. Clary* and *Richard A. Smith,* for appellants.

*Paul S. Lehman,* for appellee.

OPINION BY CUNNINGHAM, J., April 21, 1939:

We are not satisfied that the findings of fact made by the compensation board in this case are sufficiently specific to enable a court to decide the questions of law involved.

On July 28, 1931, the claimant was accidentally injured while in the course of his employment with the defendant company when a piece of iron fell on his right foot and fractured the metatarsal bone of his fourth toe. An open agreement for total disability at the rate of $13.19 per week was executed and approved. By reason of the fact that claimant had a pre-existing ailment—arteriosclerosis—his injury did not heal as rapidly as would a similar injury in the case of a normal patient. Several unsuccessful efforts were made by the employer and its insurance carrier to terminate, or at least modify, the agreement. Payments for total disability were accordingly made under Section 306 (a) of our Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended April 13, 1927, P. L. 186, 77 PS §511, up to March 7, 1937,—a period of 291-6/7 weeks and in the total amount of $3,849.57. They were automatically suspended as of that date (77 PS §774) because the defendants had filed, on February 18, 1937, a petition for modification of the agreement; that petition became the foundation of the proceedings which terminated adversely to the defendants in the court below by the entering of a judgment against them upon an award by the board of additional compensation for total disability at the rate of $13.19 per week beginning March 8, 1937,—the date as of which payments had been suspended—to continue, within the limitations of the statute, until claimant's disability changes or

ceases. This appeal is by the employer and its carrier from that judgment.

The petition was filed under the second paragraph of Section 413, as amended April 13, 1927, P. L. 186, 77 PS §772, and averred that claimant's disability had become partial and was confined exclusively to one foot. The prayer was for a modification of the original agreement into one providing compensation under Section 306 (b), 77 PS §512, for partial disability. Claimant's answer was that his "entire body" had been affected as a result of the accident. It was stipulated, however, when the case came on for hearing before the referee, that it should be disposed of in accordance with the evidence, regardless of the form of the petition, and that if the evidence showed a "specific loss" an award should be made under Section 306 (c), 77 PS §513. Appellants called Drs. H. C. Cassidy and R. R. Decker; claimant presented the testimony of Dr. F. W. Black and testified in his own behalf. The contention of appellants was that the ultimate result of claimant's injury was the "permanent loss of the use" of his right leg, within the meaning of Section 306 (c), which provides that the compensation for "all disability resulting from" such permanent injury shall be "sixty-five per centum of wages during 215 weeks." As compensation had already been paid for a period of 291-6/7 weeks, appellants contended they were entitled to have the agreement terminated as of March 7, 1937. Claimant's opposing contention was that, in addition to the injury to his foot and leg, other parts and organs of his body had been so injuriously affected by that injury as to cause disabilities, separate, apart and distinct, from those normally flowing from the loss of the use of his leg; and that the combined result was such a total incapacity to labor as entitled him to a continuance of payments under Section 306 (a) from the date as of which they had been suspended.

One of the findings of the referee was that the evi-

dence before him was "in accord in one respect and that is that the claimant at the [date of the hearing] was totally disabled." On the issue whether "the effects of the accidental injuries extended to other parts of the claimant's body," the finding of the referee reads: "The consensus of medical opinion is that the disability resulting from the injury of July 28, 1931 is confined to the claimant's right leg, and we must accordingly find this to be a fact. We further find from the evidence that for all industrial purposes this claimant has lost the use of the right leg."

The logical result of this finding of fact would be the termination of the agreement as of March 7, 1937, because appellants had by that date paid more than the compensation provided by Section 306 (c) for the loss of the use of the leg.

Instead of terminating the agreement the referee dismissed appellants' petition upon an erroneous view and construction of the second paragraph of Section 413, thus expressed by him: "However, no petition to declare this member an industrial loss was filed by the defendant within a period of 215 weeks. In other words, no petition was filed involving a change of status since the referee's opinion of June 4, 1934, [dismissing an earlier petition for modification], until the present petition was filed, almost 300 weeks after the accident. In fact, as late as January 17, 1936, an operation was performed in an effort to restore the claimant's right leg to industrial usefulness." That paragraph provides, inter alia, for the modification or termination of an agreement upon a petition filed by either party with the board, upon proof that the disability upon which the agreement was based has changed in character or extent. Here, the original agreement was for total disability under paragraph (a) of Section 306 and appellants, contending that the injuries of claimant had resolved themselves into the permanent loss of the use of his leg, sought to have the agreement modified

into an agreement or award for compensation, under paragraph (c) of that section. By the amendment to the paragraph certain limitations of time were prescribed, except in the case of eye injuries. An original agreement may have been made for total disability under paragraph (a) with a potential life of 500 weeks, or for partial disability under paragraph (b) with a possible life of 300 weeks, or for any of the definite periods specified in paragraph (c) to cover all disability resulting from one of the permanent injuries therein provided for. If a claimant seeks to review or modify an agreement, executed under paragraphs (a) or (b), he is required to file his petition within one year after the date of the last payment of compensation, or if he seeks to review or modify an agreement executed under paragraph (c) he must file his petition during the "definite period" fixed in the agreement. No period of 215 weeks, or any other definite period prescribed in paragraph (c), had ever been fixed by an award or agreement in this case. The original agreement was an open one under paragraph (a).

When an employer or its insurance carrier seeks to have an agreement modified or terminated, the petition may be filed at such time, during the life of the agreement, as the employer believes he is prepared to prove that claimant's disability has temporarily or finally ceased, or, if originally total, has become partial, or that the claimant's injury has developed into one of the permanent injuries provided for in paragraph (c). By the fourth paragraph of Section 413, 77 PS §774, it is provided that the filing of a petition to terminate or modify an agreement or award "shall operate as a supersedeas, and shall suspend the payment of compensation fixed in the agreement or by the award, in whole or to such extent as the facts alleged in the petition would, if proved, require."

If claimant's injury developed, at any time during the 500 weeks following the seventh day after the accident,

into the permanent loss of the use of his leg, and no other organs or parts of his body were affected as a direct result of that permanent injury, appellants became entitled to have the original agreement then modified into an agreement limiting their legal liability for payment of compensation to a period of 215 weeks, and payment for that period would cover all incapacity, "whether such incapacity were total, partial or no incapacity at all": *Lente v. Luci,* 275 Pa. 217, 119 A. 132. The fact that they did not undertake to prove such a development until nearly 300 weeks had expired is no reason why they should not be permitted to avail themselves of the provisions of the statute as soon as they believed they could prove the necessary facts.

As a result of the action of the referee we have the anomaly of a decision in favor of the appellants upon the merits but a deprivation of its fruits through the dismissal of their petition upon a technicality unsupported by the statute.

Upon appellants' appeal to the board, the above quoted finding of the referee, relative to the extent of claimant's injury, was set aside and, upon a review of the evidence before the referee, the following finding substituted: "The board finds as a fact that the disability resulting from the injury of July 28, 1931 is not confined to the claimant's right foot or right leg, and we accordingly find this to be a fact. We further find that, from the evidence, that for all industrial purposes this claimant is totally disabled." One of the difficulties with this finding is that it is a statement of conclusions; no specific underlying findings were made. The board seems to have been laboring under the misapprehension that the inquiry before it was the *extent* of claimant's disability. Clearly, the primary issue under the respective contentions of the parties was whether the use of claimant's leg had been permanently lost. The board made no finding one way or the other on that fundamental inquiry. If appellants proved by

competent evidence that whatever injuries were received in the accident had resolved themselves into the permanent loss of the use of the leg, the *extent* of the disability resulting from that permanent injury would be immaterial. Although that loss may have totally disabled the claimant from engaging in his former employment or doing any work for which he would otherwise have been fitted, appellants would be entitled to a modification into an award under paragraph (c). The compensation prescribed by that paragraph expressly covers "all disability resulting from permanent injuries."

If the use of the leg was permanently lost, the only possible basis for an award of compensation to this claimant in addition to what he has already received would be competent evidence that in addition to his leg injuries other specifically identified organs or parts of his body were, in the language of *Lente v. Luci,* supra, so "injured, destroyed or affected," as a direct result of the injuries to his leg, as to cause "a disability separate, apart and distinct, from that mentioned in paragraph (c)." Our Supreme Court made it abundantly clear in that case at page 222 that there must be both *competent proof* and *specific findings* of "a destruction, derangement or deficiency in the organs of the other parts of the body." There must be proof and findings of something more than "pain, annoyance, inconveniences, disability to work or anything that may come under the term 'all disability' or normally resulting from the permanent injury," and the alleged causal connection "must definitely and positively appear." All the claimant himself testified to was pain beginning in his foot and extending up through his leg and body.

We deem it essential to the proper disposition of this case that the compensation authorities make specific findings upon the question whether or not the use of claimant's leg has been permanently lost: *Kerfonte*

*v. Carrolltown Coal Co.,* et al., 94 Pa. Superior Ct. 19; *Moule v. Barrymore Seamless Wilton Corp., Inc. et al.,* 124 Pa. Superior Ct. 529, 532, 189 A. 523; *O'Donnell v. S. Fayette Twp. School District et al.,* 105 Pa. Superior Ct. 488, 161 A. 887.

If the use of the leg has been permanently lost, it is equally necessary that specific findings be made on the other feature of the case, viz; what, if any, effect that permanent injury has had on other parts or organs of the body. See *Casper v. State Workmen's Ins. Fund et al.,* 132 Pa. Superior Ct. 96, 200 A. 186; *Rednock v. Westmoreland Coal Co.,* 132 Pa. Superior Ct. 89, 200 A. 114; *Croll v. Miller et al.,* 133 Pa. Superior Ct. 448, 2 A. 2d 527; *Vanaskie v. Stevens Coal Co. et al.,* 133 Pa. Superior Ct. 457, 2 A. 2d 531; *Sharcheck v. Beaver Run Coal Co.,* 275 Pa. 225, 119 A. 135; *Zuro v. McClintic Marshall Co.,* 129 Pa. Superior Ct. 143, 195 A. 160; and *Savolaine v. Matthew Leivo & Sons et al.,* 131 Pa. Superior Ct. 508, 200 A. 243, in all of which cases the incapacity was held to be attributable to the specific loss of a member,—and *Clark v. Clearfield Opera House Co. et al.,* 275 Pa. 244, 119 A. 136; *Toth v. Pittsburgh Terminal Coal Corp.,* 110 Pa. Superior Ct. 163, 167 A. 438; *Cole v. Stewart et al.,* 111 Pa. Superior Ct. 561, 170 A. 311; *Gardner v. Pressed Steel Car Co. et al.,* 122 Pa. Superior Ct. 592, 186 A. 410; *Johnson v. Purnell et al.,* 131 Pa. Superior Ct. 230, 200 A. 151, in which it was held the disability did not result solely from the loss of a member.

We cannot agree with the contention of counsel for appellants that when they appealed from the referee's order dismissing their petition for modification, because not filed within 215 weeks, the board could not set aside his finding of fact in their favor, to the effect that claimant's disability was solely due to the loss of the use of his leg, and substitute its own finding, above quoted, because no one ever questioned the referee's original finding.

There can be no doubt of the board's general power, under Section 423, as amended, 77 PS §854, to make, or substitute, its own findings for those of the referee when an appeal has been taken to it: *Vorbnoff v. Mesta Machine Co. et al.,* 286 Pa. 199, 133 A. 256; *Barton v. Pittsburgh Coal Co.,* 113 Pa. Superior Ct. 454, 463, 173 A. 678; *Younch v. Pittsburgh Terminal Coal Corp.,* 118 Pa. Superior Ct. 396, 399, 180 A. 30; *Calderwood v. Consolidated Lumber & Supply Co.,* 91 Pa. Superior Ct. 189; *Sames v. Borough of Perkasie et al.,* 100 Pa. Superior Ct. 402; and particularly *Vonot v. Hudson Coal Co.,* 285 Pa. 385, 132 A. 347.

Moreover, the referee did not find that the loss of the use of the leg was *permanent*. One of the defects which prevent a final disposition of the case at this time is the fact that this record nowhere contains such a finding.

As we have concluded the record must be returned to the board, under Section 427, as amended, 77 PS §877, for "more specific findings of fact" upon the issues above outlined, we need not consider the evidence now before us in detail. Appellants had the burden of showing claimant's injury had developed into the permanent loss of the use of his leg within the meaning of paragraph (c). The testimony of Dr. Cassidy, standing alone, would support a finding to that effect, and, further, that the disability and pain from which claimant was suffering at the date of hearing was only such as would normally flow from that loss. Dr. Cassidy was corroborated fully by Dr. Decker. There was therefore competent expert testimony before the referee supporting his finding that the "disability resulting from the injury ...... is confined to the claimant's right leg."

It may be helpful to warn counsel for claimant that the testimony of the only medical expert called by him when measured by the test discussed in the recent case of *Elonis v. The Lytle Coal Company,* 134 Pa. Superior

Ct. 264, 3 A. (2d) 995, falls short of showing that any organ or part of claimant's body other than his foot and leg has been so injured or detrimentally affected in any way, *as a direct result* of the permanent injury to his foot and leg, that a referee or board could find he is suffering an incapacity other than such as would normally result from the loss of the use of a leg.

The board's misconception of the issue before it is demonstrated by the following paragraph from its opinion, written by Commissioner Swaney: "It seems that the intent of the defendant at this time is to show that the claimant is not totally disabled, but that his disability is partial and if that is proven the claimant's compensation would end at the end of the 300 week period."

That was not the ground upon which the modification was sought. Appellants seek to have the open agreement, drawn under paragraph (a), modified into an award, or agreement, for the payment of the amount of compensation arbitrarily fixed in paragraph (c) for the permanent loss of the use of a member. We have herein indicated the issues necessarily involved in the disposition of their application. Each side is entitled to specific findings by the board upon those issues. The present situation is comparable with that which existed in *O'Donnell v. S. Fayette Twp. School District,* supra.

The judgment is vacated and the record remitted to the court below to the end that it may be returned to the board for specific findings upon the matters indicated in this opinion, each side to be permitted to present such additional evidence as it may desire.