Opinion by
 

 Cunningham, J.,
 

 The employer and insurance carrier in this workmen’s compensation case have appealed from a judgment entered in the court below upon an order of the
 
 *577
 
 referee, affirmed by the board, December 12,1940, which reinstated, as of May 18, 1934, an original open agreement, dated December 7, 1931, for compensation for total disability. The controlling facts are not in serious dispute; the controversies arise out of the application of the law to them. Inaccurate pleading on behalf of claimant and superfluous findings by the referee, which obscure rather than clarify the issue, have led to unnecessary confusion in the record.
 

 The history of the case began on November 6, 1931, when Harry D. Hill, the claimant and appellee herein, now sixty-six years of age, sustained an injury, by accident, in the course of his employment as a well driller with the appellant-employer. A derrick cable broke; the top of the derrick and mast pole fell, striking claimant on the forehead and knocking him off the machine to the ground, a distance of some five feet.
 

 An open agreement for compensation for total disability, at the rate of $15 per week from November 14, 1931, was entered into by the parties and approved by the board. In this agreement, claimant’s injuries were described merely as a lacerated scalp with bruises of the head and back. He was paid under the agreement until June 9, 1933, when appellants discontinued payments and made an unsuccessful attempt to terminate the agreement.
 

 At a hearing before Eeferee Christley on December 14th of that year, X-ray pictures, taken March 4, 1932, demonstrated that claimant’s injuries were much more severe than they were thought to be at the time the agreement was executed. <From the testimony the referee made findings of fact, excerpts from which read: “The claimant sustained a fracture in the left side of the pelvis, through the ischium and pubic region, and X-rays revealed evidence of an impaction or compression in the upper part of the acetabulum or hip joint, where the hip joint fits on to the pelvis. The X-rays revealed
 
 *578
 
 further a hypertrophic spur formation on a number of the lumbar vertebrae.”
 

 Claimant had been treated at his home for some time by his family physician and then removed to ,St. Francis Hospital where he came under the care of Doctors J. Huber Wagner and Homer W. Grimm. The referee concluded claimant was still totally disabled, dismissed the petition for termination, and, in effect, ordered that payments be made in accordance with the agreement of December 7, 1931.
 

 Claimant’s payments for total disability were continued, in accordance with the original agreement, until May 17,1934, when he signed a supplemental agreement reciting that his disability had changed as of that date from total to partial and in which the weekly rate of compensation was reduced to $10. This rate was based upon the following recital in the agreement: “His average weekly wage at the time of his accident of Nov. 6, 1931 was $45. He now possesses an earning power equivalent to $29.62. His loss, therefore, is $15.38.” From the date of this agreement until August 6, 1937, (the day upon which a 300-week period from the time of the accident expired), payments were made in accordance with the supplemental agreement and were then discontinued.
 

 On March 3, 1938, less than one year after the last payment of compensation under the supplemental agreement, claimant filed a petition which became the basis of the controversy in this case.
 

 It was prepared by filling in a blank form evidently intended by the board to be used, inter alia, in applying for a modification of existing agreements or the reinstatement of terminated agreements or awards upon the ground of “changed disability” — one of the grounds specified in the second paragraph of Section 413 of the Workmen’s Compensation Act of June 2, 1915, P. L. 736, as amended, 77 PS §772. The fact that this petition
 
 *579
 
 was badly drawn accounts for much of the trouble in the case, but when the record is reviewed and considered as a whole many of the apparent difficulties disappear. This is particularly true in the light ,of the medical testimony showing that a decided change for the worse occurred in claimant’s physical condition between the summer of 1933, when the employer and its insurance carrier endeavored to have the original agreement .terminated, and the spring of 1938, the time of the filing of claimant’s present petition. As to disability, we have on this record the agreement of the employer and its carrier that claimant was totally disabled by the accident of November 6,1931, and an unappealed-from finding by a referee in December, 1933, that his disability was still total as of that date. Under the medical evidence, hereinafter discussed, he was obviously less able to work when he filed his petition.
 

 Looking at the real purpose of claimant’s petition, and disregarding its form, it is clear that the remedy he was seeking was to have the original agreement of December 7, 1931, reinstated upon the ground that his disability to engage in any work had not, in fact, decreased (as recited in the supplemental agreement) but, on the contrary, had increased by reason of disabling changes in his physical condition. The draftsman of the petition instead of praying for the reinstatement of the original agreement erroneously centered his attack on the expired .supplemental ,agreement of May 17, ,1934.
 

 Claimant’s petition contains an averment that his disability
 
 has increased
 
 and was total on the date of the supplemental agreement. Then, referring to the latter, the petition avers: “The Insurance carrier forced me to agree to accept partial disability in May of 1934 because I was at that time committed to the Allegheny County Workhouse where I was serving a sentence, they contending that my disability on account of being confined in the workhouse was reduced from total disability
 
 *580
 
 to partial disability.” We have repeatedly said that if a claimant is entitled to relief under any section of the statute we will consider his petition as filed under that section. , t
 

 Appellants answered denying the averments of the petition and averring that since May 17, 1934, “the claimant had suffered at most only a partial disability for which he has been paid compensation in full.” It was also averred that the petition was filed too late because it had not been filed within the 300-week period.
 

 After a hearing before Referee Dobrowolski, at which .testimony on both sides ,was taken, the referee made an order setting aside .the supplemental agreement and reinstating compensation for total disability. Upon the appeal of the employer and its carrier to the board, the record was remanded to Referee Moore for the purpose of appointing an impartial medical .expert to examine claimant and submit to examination and cross-examination. Dr. C. C. Yount was appointed and he and other witnesses testified at a hearing on November 16, 1939. The referee made findings in which he reviewed the proceedings and commented upon the fact that X-rays taken in March, 1938, as compared with those taken in October, 1933, showed a definite slipping between those dates of “the fifth lumbar .vertebra on the sacrum, termed a spondylolisthesis, to the extent of one-half inch of slipping.”
 

 On March 30,1940, an order was entered by Referee Moore, setting aside the supplemental agreement upon the ground that it was founded upon a mistake of law and fact — his theory, apparently, being that claimant was totally disabled when it was signed; that there was no evidence supporting the figures therein used as indicative of his earning power at its date; and that these figures had been arbitrarily inserted by the insurance carrier. The order then proceeded to reinstate the original agreement for total disability at the rate of
 
 *581
 
 $15 per week, as of May 18, 1934, with interest and medical expenses, etc.
 

 The board dismissed the appeal taken to it by the employer and its carrier; the court below also dismissed their appeal to it from the action of the board and entered judgment in favor of the claimant. In liquidating the judgment upon the original agreement to April 18, 1941, the court gave appellants credit for the $10 per week paid from May 18, 1934 to August 14, 1937, under the supplemental agreement. The present appeal by the employer and its carrier is from the judgment so entered.
 

 If the validity of the judgment appealed from depended upon the legality of the portion of the order setting aside the supplemental agreement it could not be sustained. The referee seems to have mistakenly thought that the first paragraph of Section 413 of the Act of 1915, as amended April 13, 1927, P. L. 186, 77 PS §771, applied to the situation before him. He overlooked the fact that this paragraph, which provides, inter alia, for the setting aside of agreements upon the ground that they have been founded upon a mistake of law or fact, applies only to
 
 existing
 
 agreements, except in the case of agreements under 306(c) :
 
 Zupicick v. P. & R. C. & I. Co.,
 
 108 Pa. Superior Ct. 165, 164 A. 731, as modified in
 
 Kitchen v. Miller Bros. Co. et al.,
 
 115 Pa. Superior Ct. 141, 174 A. 919. The supplemental agreement had expired .more than six ¡months before .the present petition was filed; there was nothing upon which the first part of the referee’s order could operate. Moreover, the findings that the supplemental agreement was founded upon mistakes of law and fact were superfluous for another reason. The amendment of June 4, 1937, P. L. 1552, 77 PS §771, was in force when the petition was filed. It provides that existing agreements may be set aside upon proof that they are “in any material respect” incorrect. As to applicability see
 
 DeJoseph v. Standard Steel Car Co. et al.,
 
 99 Pa. Superior Ct. 497,
 
 *582
 
 and
 
 Seneca v. Yale & Towne Mfg. Co. et al.,
 
 142 Pa. Superior Ct. 470, 16 A. 2d 754.
 

 It is to be noted, however, that the second paragraph of Section 413, 77 PS .§772, was not ¡affected in any way here material by the amendment of 1937. It still provided, inter alia, for the
 
 reinstatement
 
 of awards and original or supplemental agreements, under which payments have ceased, upon the ground of an increase in disability, if the petition therefor “is filed with the board within one year after ,the date of the last payment of compensation.” Claimant’s petition, having been filed within a year after the last payment under the supplemental agreement, was in time.
 

 If claimant is entitled to have the original agreement reinstated under this second paragraph, the supplemental agreement automatically disappears from the case. Its only surviving function is to furnish evidence of the credits to which appellants are entitled upon the larger payments which should have been continued under the original agreement.
 

 We turn then to the findings upon which the second part of the order of the referee, affirmed by the board and reinstating, as of May 18, 1934, the original agreement to continue within the limitations of the statute, is based. The material finding is the sixth, reading:
 

 “iSixth: That the claimant on October 10,1933, [when petition for termination was pending] was not suffering from >a condition of spondylolisthesis and that the claimant on March 7,1938, [when present petition was filed] was suffering from a condition of spondylolisthesis ......and further that the condition of spondylolisthesis or slipping of the fifth lumbar vertebra on the sacrum was due to the accident of November 6,1931.” The referee also found that the spondylolisthesis has “totally disabled” claimant.
 

 The only question of law involved upon this branch of the case is whether these findings are supported by sufficient competent and substantial evidence.
 

 
 *583
 
 The medical testimony upon this record is extensive, but for the purpose of this appeal may be thus summarized : Thyee sets of X-rays were taken upon widely separated dates. The first, by Dr. Homer W. Grimm oh October 10, 1933; the second, by him on March. 7,1938; and the third, by Dr. T. L. McCullough on or about June 12, 1939, at the instance of Dr. O. Q» Yount, the impartial medical expert. . These X-ray pictures, Considered as a whole, show that the claimant sustained a number of fractures in his lumbo sacral region and pelvis and that his most serious injury was to the joint between the fifth lumbar vertebra and the sacrum. The pictures taken in 1933 showed, in the language of Dr. Grimm, that the sacrum was “tilted forward rather acutely so that the long axis of the bone [was] almost at a right angle to the plane of the lumbar spine.” When the next pictures were taken early in 1938, it was discovered that there had been a decided increase in claimant’s disability caused by the development of a definite spondylolisthesis — a “separation of the last lumbar vertebra from, and its slipping forward on, the sacrum”: Gould’s Medical Dictionary, Fourth Edition.
 

 An excerpt from Dr. Grimm’s testimony reads: “A. On March 7th of this year (1938) I made an X-ray examination of the lumbar spine and pelvis and I find all the bony changes similar to those made at the last examination (1933) with the difference that there is a definite spondylolisthesis. This spondylolisthesis has developed between the 5th lumbar vertebra and the sacrum. That is the lowermost vertebra of the lumbar spine. So that the 5th lumbar vertebra has slipped forward on the sacrum a distance ¡of approximately This, no doubt causes the patient severe pain and retraction of movement of this portion of the back. In other words the findings show that the condition is much worse than at the last examination.”
 

 At the hearing on November 16,1939, Dr. Yount was
 
 *584
 
 called to testify to the results of his examination. In addition to his detailed testimony relative to the effect of the other fractures sustained in the accident, the witness, referring to the X-rays taken on June 12,1939, at his direction, by Dr. McCullough, testified that the pictures of the lumbo sacro regions and pelvis of claimant showed “evidence of marked slipping forward of the fifth lumbar over the first sacral segment indicating a marked spondylolisthesis.”
 

 At the last hearing on February 6, 1940, Dr. Grimm was recalled and testified that the X-rays taken by him in 1933 merely showed a condition conducive to the developing of the spondylolisthesis clearly disclosed by the pictures taken in 1938. The witness expressed his positive professional opinion that the spondylolisthesis followed from and was caused by the accident.
 

 Relative to the extent of claimant’s disability, the record contains several expressions of opinions. Dr. Paul Franklin examined claimant on March 17, 1938, and had the benefit of the X-rays taken by Dr. Grimm. He concluded the result of his examination with this statement: “I believe with his age, sixty-five, that the condition I found there is a permanent condition and that nothing could be accomplished now by treatment to remedy this condition. I believe it will cause permanent disability as far as ability to do manual work to any extent is concerned. Q. Your professional opinion is that this gentleman is permanently disabled at this time? A. It is.”
 

 Dr. Yount concluded his review of the extent and effect of claimant’s injuries as follows: “It would seem to me that this patient is totally or potentially totally disabled as a result, chiefly of the spondylolisthesis. At his age, sixty-six, I believe it would be unwise to have him undergo the necessary surgical risk to stabilize this condition.” Upon cross-examination, he said claimant is disabled “because he has a traumatic spondylolisthesis of severe degree in the lumbo sacral segment.”
 

 
 *585
 
 At the final hearing Dr. Yount was shown a series of moving pictures of claimant, taken by a representative of appellants, showing him, upon five occasions in June, 1939, walking on the street, sitting on and rising from a bench in the park, etc., and upon being recalled said that these pictures had not changed his opinion with respect to the extent of claimant’s disability; that the motions made by claimant in changing position and rising from the park bench were largely a “hip motion with an ankylosed back.”
 

 Dr. J. Huber Wagner, called by appellants, expressed a contrary opinion to the effect that claimant’s disability is not total.
 

 We are satisfied the record contains evidence sufficient in quantity and quality to justify the findings and to warrant the reinstatement of the original agreement.
 

 As the supplemental agreement is no longer a factor in the case, a detailed discussion of the circumstances under which claimant’s signature was procured is unnecessary. It is sufficient to say that his averment in his petition to the effect that he was “forced” to sign is not supported by any evidence. While the conduct of the representative of the carrier did not amount to coercion, it was not commendable. There was testimony that claimant sometimes drank to excess and his wife was frequently given his compensation check to prevent its misapplication by him. By reason of some altercation with her, he was confined in the workhouse in May, 1934. Claimant’s wife testified that when she called at the office of the carrier for the May check the supervisor of compensation asked her to take the papers over to the workhouse and have claimant sign them and said “if he didn’t sign them, he would not get any more money,” but, if he was not able to work when he came out, “then he would get his $15 a week back again.” The supervisor testified he had no recollection
 
 *586
 
 of having said claimant would not get any more money unless he signed the supplemental agreement. Whichever version be adopted, the carrier was not justified in inserting arbitrary figures in the agreement indicating that claimant had an earning power equivalent to $29.62 per week, when he had not earned anything since the accident. Its statutory remedy if it honestly believed claimant’s disability had changed to partial, was to petition for a modification of the existing agreement for total disability and assume the burden of proving claimant’s actual earning power by competent evidence.
 

 The case at bar is practically ruled by
 
 Miraglia v. Publicker Com. Al. Co. et al.,
 
 113 Pa. Superior Ct. 487, 174 A. 16. We there pointed out (p. 490) that when a workman is injured and an open agreement for compensation for total disability is entered into, “it is within the minds of the parties, ,or at least the law imputes the intention to the parties, that such agreement may run 500 weeks, if the injury develops total disability for that length of time.” Under the statute as interpreted by the Supreme Court and this court in a number of cases— several of which are cited in the Miraglia case — the limitations upon the right of this claimant to file a petition for reinstatement of the original agreement were that it be filed within 500 weeks from the time of the accident and within one year after the date of the last payment of compensation made to him by his employer or its insurance carrier. Claimant acted within those limitations.
 

 The case of
 
 Eisenaucher v. Barron,
 
 143 Pa. Superior Ct. 259, 18 A. 2d 136, cited and relied upon in behalf of appellants, is distinguishable. The petition there involved was not for the reinstatement of an original agreement with a potential life of 500 weeks, but for the review and modification of a supplemental agreement for partial disability upon the ground that it had been founded upon a mistake of law in fixing the basis of the claimant’s average weekly wage. The claimant in that
 
 *587
 
 case invoked the remedy provided by the first paragraph of Section 413. We repeated what had often been said that the phrase “at any time,” as used in the first paragraph of the section, means that the petition for review must be filed within 300 weeks from the accident for partial, or 500 weeks for total, disability. As the 300-week period in that case had expired on September 30, 1938, and the petition was not filed until November 21st of that year, we sustained the employer’s contention that it had been filed too late.
 

 For the reasons stated at length, we have treated the petition here involved as a petition under the second paragraph of Section 413 for reinstatement of the original agreement — a situation to which the Eisenaucher case has no application.
 

 Upon a review of the entire record we are unable to sustain any of the assignments of error to the judgment appealed from.
 

 Judgment affirmed.