## McGarvey v. Conemaugh Lumber Company et al., Appellants.

Argued April 16, 1934. Before
T<small>REXLER</small>, P. J., K<small>ELLER</small>, S<small>TADTFELD</small>, P<small>ARKER</small> and J<small>AMES</small>,
JJ.

*Samuel G. Wagner,* and with him *Meyer & Nunnink* and *Joseph P. Hoerle,* for appellants.

*Harold Kaminsky,* for appellee.

PER CURIAM, October 3, 1934:

An inspection of the record in this workmen's compensation case, in which the employer and its insurance carrier have appealed, discloses that neither the compensation authorities nor the court below properly discharged the respective duties imposed upon them by the Act of June 2, 1915, P. L. 736 and its amendments.

Claimant, in the course of his employment as a planing mill worker with Conemaugh Lumber Company, accidentally fell from a bin to a driveway and injured his right foot. The accident occurred February 24, 1927, and an open agreement for the payment of compensation for total disability from March 6th was executed and approved.

By a supplemental agreement, approved April 27, 1929, it was stipulated that claimant's disability had so changed, as of April 15, 1929, as to amount to the "permanent and complete loss of the use of his right foot," and payment of compensation, at the rate of $12 per week, for the fixed period of 150 weeks [Section 306 (c)] from the tenth day after the accident was therein provided for.

In June, 1929, claimant petitioned for, and was granted, commutation of the payments which he would have been entitled to receive during the remainder of the period; he executed a final receipt on July 11, 1929. Ordinarily, this would have been the end of the case; the payments thus made under Section 306 (c) were

for any and all disability incident to the loss of the use of claimant's right foot, whether it ceased during, or continued after the expiration of, the fixed period: Bausch v. Fidler, 277 Pa. 573, 121 A. 507.

The controversy out of which this appeal arose had its origin in the filing by claimant on January 19, 1931, of a petition for "review" of the supplemental agreement; it was stated therein that it was filed under Section 413 of the amendatory act of June 26, 1919, P. L. 642, as further amended by the Act of April 13, 1927, P. L. 186, 194. The ground alleged was that the agreement "was procured by [a] ...... mistake," thus described: "Agreement was signed on the supposition that I would be able to go to my employment at or before the expiration of the agreement, which did not prove out according to the agreement, as I am unable at the present time to perform any manual labor."

This petition was filed long after the expiration of the definite period of 150 weeks prescribed by Section 306 (c) for the loss of the use of a foot and more than one year after the last payment of compensation under the agreement. Under the repeated decisions of this court, of which Zupicick v. Phila. and Reading C. & I. Co., 108 Pa. Superior Ct. 165, 164 A. 731, is an example, this petition could not be entertained by the board under the first paragraph of Section 413, upon any of the grounds therein specified, because that paragraph applies only to existing agreements and this one had long since been terminated; nor could it be entertained, for any of the purposes designated in the second paragraph of that section, because the limitations therein contained had expired. By the answer to the petition it was denied that the supplemental agreement had been entered into through mistake, fraud or coercion; the limitations of the second

paragraph were pleaded, and it was averred that claimant had been paid in full for the permanent loss of the use of his foot.

Although it was the clear duty of the board to dismiss the petition, it was referred to a referee who held a hearing on February 27, 1931, at which Dr. Alexander, appointed as an impartial expert, was the only witness examined.

The substance of the medical testimony was that the witness had no knowledge of the condition of the foot at the time the supplemental agreement was executed or when the final receipt was signed; that although claimant had been paid for the loss of the use of the foot, he had, at the date of the hearing, a partial disability which prevented him from engaging in general carpenter work; and that, in the opinion of the witness, the condition of the foot at that date did not amount to the permanent loss of its use.

With respect to the partial disability described by the medical expert as existing at the time of the hearing, it is obvious that it would have been even greater if the foot had been amputated. There is not the slightest suggestion in the testimony that claimant had, as a result of the accident, suffered any injury to any member or organ other than his right foot, or that he had any disability separate, apart and distinct, from that attributable solely to his injured foot.

Even if the petition had been filed in time, no award of additional compensation could have been made without doing violence to the plain language and clear intendment of Section 306 (c). After a claimant has agreed in writing that he has permanently lost the use of a member and has received the full compensation provided for such loss, he will not, years later, be permitted, in the absence of clear proof of mistake, fraud or coercion, to repudiate his agreement.

There is no evidence upon this record from which

an inference could be drawn that the supplemental agreement was founded upon any mistake with respect to the condition of claimant's foot when it was executed.

It may be true that he "supposed," as averred in his petition, that his disability would cease before the expiration of the period, but such cessation of disability was not one of the conditions of the agreement, nor was it necessarily within the contemplation of Section 306 (c). Increase, decrease, and even absence, of disability are immaterial matters under that section. In the case of DeJoseph v. Standard Steel Car Co. et al., 99 Pa. Superior Ct. 497, cited below, there was an unappealed from finding that the employe's injury did not entitle him to compensation under Section 306 (c).

Notwithstanding all this, the referee undertook to make an award on March 14, 1931, under Section 306 (b) for partial disability. His order reads: "The final receipt executed in this case is hereby set aside and the agreement is reinstated and modified to provide compensation for a period of three hundred (300) weeks, should claimant's disability last that long, and should he suffer any loss of earnings as a result of the injury he sustained. The defendant is to be given credit for compensation paid for a period of 150 weeks."

Manifestly, this is not an award upon which a judgment could be entered. It is not stated when the alleged partial disability began, and the conditional provision that it should become operative only if claimant "should suffer any loss of earnings" destroys any effectiveness it might otherwise have.

If there were any foundation in this record for an award, we could return it with instructions to fix the date upon which the partial disability began and determine the extent of the diminution in claimant's

earning power; but, for the reasons above stated, there is no foundation for any award of additional compensation.

Upon the employer's appeal, the board erroneously held that the agreement was reviewable under the first paragraph of Section 413 and affirmed the order of the referee. When the employer and its insurance carrier appealed to the court below, that tribunal ignored the provisions of Section 427, requiring it to enter a judgment and authorizing it to return a record for more specific findings of fact when necessary; it merely quoted and affirmed the defective order of the referee. In the course of its opinion, the court below not only misinterpreted the testimony of Dr. Alexander but also incorrectly stated the referee and board had made an award for "total disability." The statement in the opinion is: "A competent physician testified *before this agreement* was entered into that it was not a complete loss of the use of the foot." The testimony of Dr. Alexander reads: "I can't say just what the condition of the foot was sometime after he was injured, but it certainly is not the loss of the use of that foot at the *present time.*"

If there were any evidence that the final receipt of July 11, 1929, was founded upon a mistake, we could authorize the granting of relief under Section 434, (Busi v. A. & S. Wilson Co., 110 Pa. Superior Ct. 95, 101, 167 A. 655) although the petition was filed under Section 413, but there is none. Our review of the entire record has convinced us that the assignments of error must be sustained.

The order appealed from is reversed and judgment is here entered in favor of the appellants.