Opinion by
 

 Keller, P. J.,
 

 The principal question involved in this workmen’s compensation case is whether the claimant’s application to set aside a final receipt of compensation paid under a supplemental agreement, and to reinstate the original agreement of compensation for total disability was filed too late.
 

 On November 1, 1926 claimant sustained an accidental injury in the course of his employment with the defendant as a pressman, which totally disabled him. An open agreement of compensation for total disability at $12 per week from November 12, 1926 was entered into on November 24, 1926, and numbered 2078741. In the agreement, which was prepared by the employer or its insurance carrier, the accident and resulting disability were described as follows: “Tightening bolt, wrench slipped, and he fell against heater. A chip off head of left Humerus. Left.” As a matter of fact, as the undisputed testimony at the hearing revealed — the defendant offered none — the injury was
 
 *362
 
 not confined to the humerus, which is the upper bone of the arm, but the left
 
 shoulder
 
 was also injured.
 

 On May 31, 1929 the employer and its insurance carrier filed a petition with the Workmen’s Compensation Board, setting forth that
 
 total
 
 disability under the injury had ceased “as of July 22d [1928], on which date injured resumed employment and has been working ever since.” The petition further set forth that the claimant still had a partial disability which reflected a loss in earnings, but that he refused to execute a final receipt to terminate total disability or to execute a supplemental agreement for partial disability; and asked the board to modify said agreement. In his answer to this petition the claimant admitted that
 
 total
 
 disability from the original injury had ceased, but averred that his injured arm had not healed to such an extent as to make it a useful member and probably never would. It does not appear when the employer or its insurance carrier ceased making payments for total disability under the agreement; but the record shows that following a hearing on the petition and answer, the parties entered into a supplemental agreement on August 30, 1929, under the terms of which the claimant was to receive compensation for total disability, $12 per week, until July 23, 1928; then, for partial disability at the rate of $2.41 a week from July 24, 1928 until October 25, 1928; then, for total disability at $12 a week from October 26, 1928 to February 19, 1929, and then, partial disability at the rate of $3.82 from February 20, 1929.
 

 On October 2, 1930, the parties entered into another agreement of compensation, likewise prepared by the employer or its insurance carrier, which was almost identical with the original agreement, except that following the description of the accident and injury above-recited appeared the addition, “(Loss of use of left arm)”; and that paragraph 7 on the back of the agreement provided for payment of compensation at the
 
 *363
 
 rate of $12 per week, payable weekly “beginning from November 11, 1926 for 215 weeks”, followed by the clause, “For ...... weeks as provided in Section 306a, if the incapacity is total or for ,.....weeks as provided in Section 306b if the incapacity is partial, until this agreement has been terminated by final receipt or supplemental agreement approved by the Workmen’s Compensation Board or by the order of such Board.” (See
 
 Priorello v. State Workmen’s Ins. Fund,
 
 133 Pa. Superior Ct. 373, 2 A. 2d 864). The agreement did not state that the employee had returned to work. It fixed the total compensation at $2580, and under the heading “Any further matters agreed upon”, appeared “Loss of use of left arm”.
 

 Although not so designated, it was a supplemental agreement to agreement 2078741 and was filed to the same number.
 

 On December 23, 1930 — less than three months thereafter — the employee signed a final settlement receipt showing the receipt of $15.43 .the final payment of compensation for 215 weeks. At the time of signing this final receipt the employee claimant was totally disabled, haying his left- arm in a brace or frame and carried in an
 
 airplane splint, placed at a right angle to his body,
 
 following an operation at. the Methodist Episcopal Hospital on April 4, 193.0,. six months before the. supplemental agreement of October 2, 1930 was entered into and nearly nine months before the final receipt was signed.
 

 Of course, if the claimant’s injury had been confined to his left arm and amounted to the permanent loss of the use of the arm, it made no difference whether he was disabled, totally or partially, or was fully able to work when he signed the agreement of October 2, 1930:
 
 Lente v. Luci,
 
 275 Pa. 217, 119 A. 132; but if the injury extended to the shoulder also, and he was then totally disabled from working because of said
 
 *364
 
 injuries, the supplemental agreement of October 2, 1930 was not a full and correct statement of the injury, compensation was not payable under section 306 (c)
 
 (Clark v. Clearfield Opera House Co.,
 
 275 Pa. 244, 119 A. 136;
 
 Toth v. Pittsburgh Terminal Coal Corp.,
 
 110 Pa. Superior Ct. 163, 167 A. 438;
 
 Cole v. Stewart,
 
 111 Pa. Superior Ct. 561, 170 A. 311), but under section 306 (a) ; and if total disability from the injury to the shoulder extended beyond the 215 weeks allowed for the loss of his arm, the claimant would be entitled to have the final receipt set aside and the original compensation agreement reinstated provided (1) the employer was guilty of any improper conduct in securing the execution of the supplemental agreement or final receipt, or (2) they were executed under a mutual mistake of fact, that is, that both parties at the time of execution thought the injury was confined to the left arm whereas in fact, the left shoulder was then also involved:
 
 Nigbrowich v. State Workmen’s Ins. Fund,
 
 131 Pa. Superior Ct. 532, 537, 200 A. 282. The general principle underlying the decision in
 
 Gardner v. Pressed Steel Car Co.,
 
 122 Pa. Superior Ct. 592, 186 A. 410, would apply.
 

 Our case differs from
 
 Kitchen v. Miller Bros. Co.,
 
 115 Pa. Superior Ct. 141, 174 A. 919, in that the original agreement of compensation in that case was under section 306 (c) for the permanent loss of a member. In the Kitchen case it was held that where an employee has suffered the permanent loss of a member compensable under section 306 (c) and, by fraud or other improper conduct, etc., a compensation agreement has been entered into which provides for compensation for a shorter period of time than the injured employee was entitled to under the compensation act, the limitation period within which he must move to set aside the agreement so improperly obtained is not. the number of weeks specified in the agreement
 
 *365
 
 which he seeks to set aside, but the period fixed by-section 306 (c) for the permanent loss of the member which the claimant actually suffered.
 
 [1]
 

 In the present case, however, the original compensation agreement which was entered into was not under section 306 (c) for the permanent loss of a member, but was under section 306 (a) for total disability, and might extend for 500 weeks (or until June 25,1936) if total disability lasted that long. This case is more nearly like
 
 Gardner v. Pressed Steel Car Co.,
 
 supra, where an open agreement of compensation for total disability because of injury to an eye, was entered into on July 16, 1929, providing for payment of $15 per week from June 3, 1929. After payments had been made for 13 weeks the injury to the eye had developed into the permanent loss of the use of the eye, and on September 19 a supplemental agreement was executed providing for compensation for 125 weeks for the loss of the eye under section 306 (c), which would expire October 28, 1931. The board commuted the payments on March 14, 1930, on which day claimant executed a final receipt. On June 7, 1932, nearly two years and three months after the commuted payment and over seven months after the expiration of the 125 weeks period, the claimant filed a petition asking for a review of the compensation agreements, based upon the fact that when he signed the supplemental agreement he was suffering from dementia praecox which was aggravated to such an extent by the accidental injury that it totally disabled him from working in any gainful employment. We sustained an additional award, saying, through Judge Cunningham:
 

 “It should be borne in mind that the original agree
 
 *366
 
 ment into which the employer entered with its employee had a potential life of 500 weeks under 306 (a). When it became apparent that he had lost the use of his eye, it was proper enough to enter into a contract to pay him for 125 weeks under 306 (c) for that permanent injury, but that did not end the employer’s liability in the event of the development of a disability separate and distinct from that covered by the supplemental contract.
 

 “We are not here dealing with a mere mistaken belief that a disability, compensable under 306 (a) or 306 (b) and covered by an original agreement, had terminated, as is frequently the case, but with a complete lack of knowledge by both parties of the extent of the injuries inflicted by the accident.
 

 “Our conclusion, upon a review of the entire record, is that the referee and court below were justified in holding that claimant was entitled to an award of additional compensation under 306 (a), not upon all the reasons stated by them, but upon the ground that it was sufficiently shown that the final receipt was founded upon a mutual mistake of fact.”
 

 This claimant has had a long hospital experience as a result of this injury. On January 15, 1927 he was sent by defendants to the Mercy Hospital in Pittsburgh, where an operation was performed, and in September 1927 was sent back for another operation. At least one of these operations was to his shoulder, for the scar resulting from it was noticed when he was operated on at the Methodist Episcopal Hospital for
 
 reconstruction of his shoulder joint
 
 on April 4,1930. The examination at the Methodist Episcopal Hospital showed that his
 
 shoulder joint
 
 had been fractured by the fall, rather than the humerus, and that osteomyelitis had developed in the shoulder and apparently spread to the humerus, for the osteomyelitis in the shoulder was described as ‘old’, and that adjective was not applied to
 
 *367
 
 the diagnosis of osteomyelitis in the humerus. Following that operation, and while the
 
 shoulder
 
 was still discharging pus on April 19, 1930 — according to the hospital records— his shoulder and arm were put in a frame and his arm in an airplane splint, which made it impossible for him to do any work; and that was his condition when the supplemental agreement of October 2,1930 was prepared by defendants, which said nothing about the injury to the shoulder and limited it to the loss of use of his arm. It is understandable that the
 
 claimant
 
 would not discriminate between the shoulder and the arm, but the defendants, and especially the insurance carrier, should have. The slightest examination by it of the records of the Methodist Episcopal Hospital, or inquiry there concerning the reason for claimant’s airplane splint which he carried at the time, would have revealed the diseased condition of the shoulder and that his injury was not confined to the arm, even if it had resulted in the loss of its use. It is scarcely conceivable that the insurance carrier made no inquiry into or examination of those records before it prepared the supplemental agreement of October 2, 1930.
 

 Between April 19, 1930 and August 1931, claimant continued to remain totally disabled, with his arm in the airplane splint, and that was his condition when on August 5, 1931 he was admitted to the Jefferson Hospital, where his trouble was diagnosed as osteomyelitis of the left shoulder, shown by (1) pain and inability to use left shoulder, and (2) a discharge from the shoulder.
 

 The records of the Jefferson Hospital and the testimony of Dr. Fry show an almost constant series of operations, beginning with September 1931 and continuing until April 1934. At least twelve operations and fifteen blood transfusions were performed, some in an endeavor to save his arm, which finally had to
 
 *368
 
 be amputated on November 8, 1933, in order to save his life; but the testimony as a whole shows that the shoulder had been involved from the beginning, or at least long before the supplemental agreement of October 2, 1930. If the insurance carrier knew of this, its action in preparing the supplemental agreement, limiting the injury to the loss of use of the arm, was improper:
 
 Johnson v. Purnell,
 
 131 Pa. Superior Ct. 230, 234-5, 200 A. 151. If it did not, it was a mutual mistake of fact, which entitled the claimant to a setting aside of the final receipt and the reinstatement of the original agreement of compensation:
 
 Tinsman v. Jones & Laughlin Steel Corp.,
 
 118 Pa. Superior Ct. 516, 524, 180 A. 175.
 

 We need not refer to all the proceedings before the board following the claimant’s application on May 17, 1934 to set aside the final receipt and reinstate the original agreement, for the rehearing granted by the board, pursuant to petition of June 26, 1937, superseded them. The use of three separate applications, simultaneously filed, may have created some confusion, but as the forms prepared by the Bureau scarcely fitted the circumstances of the case, the claimant was entitled to whatever relief, if any, was appropriate. However, it would not be under the
 
 second
 
 paragraph of section 413, but under section 434:
 
 McGarvey v. Conemaugh Lumber Co.,
 
 114 Pa. Superior Ct. 368, 374, 174 A. 609. The second paragraph of section 413 relates to
 
 changes
 
 that have occurred in the employee’s physical condition
 
 since
 
 the compensation agreement was entered into. The basis of appellant’s present claim is that the supplemental agreement of October 2, 1930 was executed under a mistake of fact, both parties being under the mistaken impression that his injury — which at that time totally disabled him from any work and so continued until April 1934 at least — was confined to the left arm, whereas, it also
 
 *369
 
 involved and affected his left shoulder. The limitation added to section 413 by the amending Act of April 13, 1927, P. L. 186, applies only to the
 
 second
 
 paragraph of section 413, not to the
 
 first
 
 paragraph, relating to the review, modification and setting aside of agreements for fraud or other improper conduct or mistake; nor to section 434 relating to the setting aside of final receipts on the same grounds:
 
 Keifer v. Phila. & R. C. & I. Co.,
 
 102 Pa. Superior Ct. 235, 239, 156 A. 722;
 
 Zupicick v. Phila. & R. C. & I. Co.,
 
 108 Pa. Superior Ct. 165, 169, 164 A. 731. We cannot adopt the suggestion of claimant’s counsel that the amendment to section 434 contained in the Act of June 4, 1937, P. L. 1552 (effective January 1, 1938) applies. Although procedural in character, its provisions cannot be invoked as respects an application made to set aside a final receipt signed nearly four years before its effective date, just because it happened to be still pending and undetermined on January 1, 1938. If it could be, it would likewise be affected by the repeal of the Act of 1937 by the Act of June 21, 1939, P. L. 520, effective July 1, 1939, while the matter was still pending and undetermined.
 

 On July 29 1938, the petition for rehearing was allowed by the board while an appeal was pending in the lower court, and the case was sent back to Referee Casey for rehearing. On July 14, 1939, the referee filed his decision, making the following findings of fact: “(1) That the disability of the claimant extends beyond the injury to his left arm. (2) That the claimant is now suffering an involvement of his left shoulder girdle up to a point near the neck, which condition is the result of the accident in this case. (3) That the claimant is totally disabled as a result of the above described condition.” His conclusion of law was that claimant was entitled to compensation at $12 per week for total disability from December 26, 1930, until
 
 *370
 
 such time as his disability should cease or change in extent within the limitation of the act. He awarded compensation in accordance with said conclusion of law.
 

 On appeal to the board, that body ruled that the petitions were filed too late. It did not set aside the referee’s findings of fact, but held them insufficient and made three additional findings: (4) That the petition should have been filed before the expiration of the 215 weeks — (that is, between October 2, 1930 and December 26, 1930). (5) That there had been no fraud, coercion or improper conduct in obtaining the supplemental agreement or final receipt, and (6) That the disability “which claimant
 
 now suffers”
 
 (that is, on May 24, 1940) did not exist at the time the final receipt was executed. It concluded as matter of law, that, by reason of the petitions not having been filed in time, it had no jurisdiction and sustained the appeal and dismissed the petitions.
 

 The court of common pleas dismissed the claimant’s appeal.
 

 The referee misunderstood the purpose of the hearing before him. He overlooked the initial duty resting on him, viz., to find whether
 
 at the time the supplemental agreement of October
 
 ÍB,
 
 1980
 
 was entered into, the claimant was suffering from a diseased condition of the left
 
 shoulder
 
 resulting from an injury to it received in the accident on November 1, 1926, which was a factor in his total disability
 
 unquestionably
 
 existing when that agreement was signed.
 

 While the hospital records and the testimony of Dr. Fry clearly established this, and the evidence in the record would not support an adverse finding, we are not the fact finding body and cannot add such a finding of fact to the referee’s decision which is deficient without it.
 

 We do not agree with the ruling of the board that in
 
 *371
 
 the circumstances present in this case the application to set aside the final receipt and reinstate the original agreement of compensation was made too late, and that it was without jurisdiction to consider it:
 
 Mc-Kissick v. Penn Brook Coal Co.,
 
 110 Pa. Superior Ct. 444, 449, 168 A. 691;
 
 Nighrovich v. State Workmen’s Ins. Fund,
 
 supra;
 
 Gardner v. Pressed Steel Car Co.,
 
 supra. The question is not whether the claimant’s condition at the time of the hearing was or was not the same as when the final receipt was signed. It is rather, whether at the time the supplemental agreement was entered into and the final receipt was signed, the claimant’s left
 
 shoulder
 
 was affected by osteomyelitis, resulting from the injury, to such an extent as to contribute to his total disability, which unquestionably then existed. As we said before, we find nothing in the evidence before us that will support a finding that- it was not; but we cannot impose a finding of fact on the board; we can only review its action, if it makes a finding not supported by the evidence. It must be remembered, however, that if the condition of the
 
 shoulder
 
 on October 2,1930 was such as totally to disable claimant from working, the fact that the condition subsequently grew worse would not prevent his being entitled to compensation. He was entitled to compensation for total disability none the less, if the condition of his shoulder then contributed to his total disability. He need not have been in the same bodily condition as at the hearing.
 

 The judgment is reversed and the record is remitted to the court below with directions to send it back to the board, to hear and determine the matter in accordance with the legal principles stated in this opinion.