512 A.2d 1325

Travelers Insurance Company, Petitioner *v.* Workmen's Compensation Appeal Board (Hannigan), Respondent.

Submitted on briefs April 10, 1986, to Judges MACPHAIL and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Charles S. Katz, Jr., Swartz, Campbell & Detweiler,* for petitioner.

*Daniel E. Murray, M. Mark Mendel, Ltd.,* for respondent, Eugene Hannigan.

Opinion by Senior Judge Barbieri, July 22, 1986:

Travelers Insurance Company, Employer, appeals here an order of the Workmen's Compensation Appeal Board (Board) which affirmed an award to Eugene Hannigan, Claimant, of total disability benefits under provisions of The Pennsylvania Workmen's Compensation Act (Act).[1] We will affirm.

The principal issue presented for our review by Petitioner-Employer is whether or not the Claim Petition on which benefits were awarded, filed September 18, 1981, should have been deemed barred for having been filed more than three years after the injury suffered by Claimant on October 22, 1977.[2]

The following referee's findings of fact are supported by the testimony:

4. At approximately 10:30 a.m., Saturday, October 22, 1977, claimant slipped on a wet stairway at the defendant's drive-in facility, put his right hand down to break his fall and felt a snap in the right arm and shoulder but continued to work until 12:30 p.m.

5. Monday morning October 24, 1977, claimant called the center city office of defendant and reported the accident and his injury to the claims manager, Kerby Conway.

. . . .

---

[1] Section 306(a) of the Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §511.

[2] Section 315 of the Act, 77 P.S. §602, provides in part: In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof.

11. Claimant submitted his bills to defendant, Travellers [sic], as he was instructed to be paid under the Workmen's Compensation Claim.

12. As a result of the continuing disability and pain, claimant was forced to leave his employment with defendant on April 25, 1979.

13. Claimant was not aware until April of 1979 that defendant had not filed a petition and, in fact, the Workmen's Compensation Claim had never been opened, despite representations to the contrary eighteen months earlier.

The referee made the following conclusions of law:

5. Where a claimant notifies his employer of a work-related injury and is told that a file would be opened, the limitation period for filing the petition must be extended.

6. Claimant was not notified until April of 1979 that no claim had been filed under the Workmen's Compensation Act and therefore the filing of the Petition on September 18, 1981 was timely. Defendant is estopped from asserting the Statute of Limitations in three years from the date of the injury when it led claimant to believe, until April of 1979 that a Workmen's Compensation Claim had been opened.

The referee, of course, as the final arbiter of credibility issues may properly accept the testimony of Claimant. We note, however, that Claimant's testimony as to his assurances of his claim having been opened and accepted by his Employer is supported by testimony of Kirby R. Conway, Employer's Claims Manager, under whose supervision Claimant worked as an automobile damage appraiser. Mr. Conway testified:

Q. What action did you take?

A. I told Mr. Boyle to go to our Group Claims Department, which is on another floor

in another department, and obtain information from that file about these bills and get copies of any unpaid bills and just set up a file and handle this Workers' Compensation claim.

Q. Did you tell Mr. Boyle to set this up as a group medical claim or as a Workmen's Compensation claim?

. . . .

Q. Sir, what sort of file did you tell Mr. Boyle to set up?

A. A Workers' Compensation file.

Q. Did you instruct Mr. Boyle to pay any disability benefits?

A. No, I would have left it to Mr. Boyle to just set the file up and investigate and do what he thought should be done after investigating the file.

While Employer argues that the limitation in Section 315 of the Act[3] is not tolled solely by the payment of medical expenses, citing our decision in *Workmen's Compensation Appeal Board v. Niemann*, 24 Pa. Commonwealth Ct. 377, 356 A.2d 370 (1976), we do not see such payments as the sole basis for the referee's decision in tolling the statute of limitations.[4] Rather, it would appear that the payment of medical expenses was only one evidentiary factor in the determination that the conduct of the Employer was such as to, either wittingly or unwittingly,[5] cause Claimant to neglect the filing of the

---

[3] *Id.*

[4] Chairman Fergus, in joining with two other commissioners in the Board's decision in this case noted: "I think the payment of medical toll's the Statute of Limitations. See A-81512." In view of the conclusions which we have reached otherwise as to tolling the limitation in Section 315, we decline to address at this time the question raised by Chairman Fergus.

[5] Although the referee stated in his eighth Conclusion of Law that the "conclusion is warranted that claimant was intentionally

claim, assuming that the claim had been accepted and whatever steps such as filing would have been required to honor the claim had been taken, with no further action required by Claimant. We find solid support for this view, particularly in decisions of this Court such as *Dudley v. Workmen's Compensation Appeal Board,* 80 Pa. Commonwealth Ct. 233, 471 A.2d 169 (1984) and *U.S. Steel Corp. v. Iwaskewycz,* 7 Pa. Commonwealth Ct. 211, 298 A.2d 62 (1972).

As found by the referee, it was in April of 1979 that Claimant first learned that no steps had been taken to honor his claim. He testified:

Q. Tell His Honor what reasons you left Trav-. elers at the end of April 1979.

A. I went to see the manager with these notices I was getting from the doctors whose bills were unpaid, and I was advised by the manager—I wasn't aware of the fact that they had never opened up a Workmen's Comp. file for the injury I had sustained. I didn't know this until I had the conversation with the manager. I advised him that all the time I was in their employee [sic] I had very rigid rules that I had to follow in evaluating losses and dealing with the insured and the claimants, and I felt that these same rules that applied to me as an appraiser should also apply to the people that were responsible for handling a Workmen's Comp. claim.

I was advised at this time that they failed to open up a Workmen's Comp. claim, and they

lulled into a false sense of security by the procedure used and therefore should not be faulted with filing an untimely claim," we note that "unintentional deception" as well as intentional conduct will toll the limitation on filing. *Dudley v. Workmen's Compensation Appeal Board,* 80 Pa. Commonwealth Ct. 233, 471 A.2d 169 (1984).

treated me under the sick leave program and the bills were overlooked. I further confirmed with Mr. Conway about the shabby way I was getting treated, and I felt that the best thing for me to do is to resign the position, which I did.

In *Dudley,* we stated:

We cannot say that an injured worker, who does not file a claim because he reasonably believes his employer has done so on his behalf, is guilty of sleeping on his rights. When an employer, through its acts or statements, lulls a claimant into a false sense of security regarding the filing of a workmen's compensation claim, those actions, whether intentional or unintentional, toll the running of the limitation period of section 315 of the Act. That period reasonably should not begin until the claimant knows, or with reasonable diligence could know, of his deception.[6]

80 Pa. Commonwealth Ct. at 241, 471 A.2d at 173.

Employer argues that this case is controlled by our Supreme Court's decision in *Taglianetti v. Workmen's Compensation Appeal Board (Hospital of the University of Pennsylvania),* 503 Pa. 270, 469 A.2d 548 (1983), but we find that case clearly distinguishable from this one. In that case, where the claimant filed a death claim some six years after the work-related death, the Supreme Court simply ruled that the employer had no responsibility to explain all possible benefits including

---

[6] We note that the date in April of 1979 when Mr. Conway instructed Mr. Boyle to process Claimant's workmen's compensation claim was well within the three-year limitation period following the injury on October 22, 1977, and that if Claimant had been told then that his claim would not be honored, he would have had ample time to file without any extension of the limitation in Section 315.

those under the Workmen's Compensation laws or the failure to do so, as was contended, would cause an indefinite tolling of the limitation in Section 315. Obviously, *Taglianetti* provides no support for the Employer's contention here.

Employer also contends that there is an inconsistency in the referee's factual determinations in that in one finding he states that Claimant had lost the use of his right arm, whereas compensation was awarded for total disability. We see no merit in this contention, since it can be quite consistent for Claimant to have lost the use of his arm, but still have suffered total disability. The referee did not find that all of Claimant's disability was limited to loss of use of the arm. In fact, five of his findings specifically indicate shoulder as well as arm involvement,[7] and our appellate court decisions have supported awards for total disability where there was the loss of use of a member plus a shoulder involvement. *See Carnovale v. Supreme Clothes, Inc.,* 7 Pa. Commonwealth Ct. 253, 298 A.2d 640 (1973) (loss of hand with "shoulder syndrome"); *Marshall v. City of Altoona,* 208 Pa. Superior Ct. 465, 222 A.2d 408 (1966) (loss of use of right arm including the "shoulder girdle and shoulder joint"); *Mancini v. Pennsylvania Rubber Co.,* 147 Pa. Superior Ct. 359, 24 A.2d 151 (1942) (loss of use of left arm but left shoulder also involved).

Also, we find no merit in the Employer's final contention that the referee failed to resolve all of the issues "raised by the evidence." We know of no rule or decision to the effect that an award based on findings which are supported by the evidence may be erroneous as a matter of law because the referee has not met other

---

[7] The shoulder involvement is described in Findings Nos. 4 and 6 quoted above; in Nos. 10, 15 and 16; as well as in Conclusion of Law No. 4.

issues which can be visualized by examination of the evidence, the referee having properly disposed of those issues which are raised by the parties and which require determination and disposition in order to decide the case.

ORDER

Now, July 22, 1986, the order of the Workmen's Compensation Appeal Board at No. A-87795, decided November 8, 1984, is hereby affirmed.