## WOODBURN v. STANDARD FORGINGS CORPORATION.

### No. 7064.

Circuit Court of Appeals, Seventh Circuit. April 16, 1940.

Rehearing Denied June 15, 1940.

Frederick C. Crumpacker, Edwin H. Friedrich, and Frederick C. Crumpacker, Jr., all of Hammond, Ind., for appellant.

Morris Chudom and Robert H. Moore, both of Gary, Ind., for appellee.

Before EVANS, SPARKS, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

Plaintiff-appellee recovered judgment for damages caused by the alleged fraudulent misrepresentations and conduct of defendant corporation. The gist of plaintiff's claim was that he had been deprived of his rights under the Indiana Workmen's Compensation Law through reliance upon the misrepresentations of defendant; that the misrepresentations concealed from the plaintiff the fact that he had suffered a fractured hip in the course of his employment; and that by such misrepresentations plaintiff was led to believe that the defendant was protecting his interests under the Indiana Compensation Law, and that because of such belief plaintiff had failed to take action until his claim was barred by law, the period of limitation being two years.[1]

The evidence considered in the light most favorable to plaintiff justifies the following summary of the facts. Defendant is a corporation engaged in the manufacture of heavy drop forgings and other articles in the City of East Chicago, Indiana, and it operates under the Workmen's Compensation Act. On August 22, 1932, plaintiff was an employee of defendant and on that date was struck across the hips and small of the back by a heavy timber, while engaged in performing the duties of his employment. The blow caused a fracture of plaintiff's left hip. Thereupon plaintiff was taken to defendant's safety director where he was examined in a first-aid room maintained by defendant and was told by the safety director that "there was something seriously wrong" with him and that he would be taken to the doctor the next day. On the following day plaintiff was taken to one Dr. Robinson who was employed by defendant as its company doctor, and was "the doctor for the Standard Forgings Corporation to whom all cases requiring medical attention were referred" by the safety director. Dr. Robinson examined plaintiff and discovered that he was suffering from a fractured hip, but advised plaintiff that he "was bruised up" but that he "would come out all right"; that in a short time the plaintiff "would be able to go back to work and would be a good man." Plaintiff also was advised that he had contracted arthritis. Various misrepresentations continued until after the expiration of the two year period for filing claims with the Industrial Board of Indiana. Plaintiff received payment from the Standard Forgings Corporation Mutual Aid Benefit Association, which is a voluntary association of employees. Monthly dues are collected from the employees and benefits are paid to members for injuries which are not compensable under the Compensation Law. Defendant's safety director informed plaintiff that the payments which he was receiving were compensation for his accident, and plaintiff was informed by agents of defendant that he need not file a claim, that defendant "would take care of that with the Board." The defendant did not file a claim for plaintiff and plaintiff did not file one because, as he testified, defendant "told me I did not have to file it, that it would be taken care of by the company, and they would pay me." The safety director advised plaintiff that he need not employ an attorney, that "they would take care" of him. Late in 1935 plaintiff learned that he had sustained a fractured hip; and in 1938 Dr. Robinson informed plaintiff that he was suffering from a fractured hip and stated in the presence of plaintiff and his wife that he, Dr. Robinson, knew at all times that the hip was broken. In the presence of plaintiff and his wife Dr. Robinson telephoned the company and in the

---

[1] Burns' Ind. Statutes Annotated 1933, Vol. 8, Sec. 40-1224.

course of the conversation made the following statement: "If you can't give this man some light job to do why don't you take care of him? You know what is the matter with this man as well as I do." Plaintiff did not employ his own doctor after learning that his hip was broken because the safety director told him that if he did not go to the company doctor he would have to take care of himself. Defendant's agent at one time informed plaintiff that the company's insurance company "went broke" and that they "would figure out a way to pay (him)." The last payment made to plaintiff was for $130, and accompanying the check was a statement of release of all claims of plaintiff against the defendant, and plaintiff was asked to sign and return such release. Plaintiff testified that he did not know that the payments which he had received were furnished by the Benefit Association.

Defendant's case on appeal rests upon two general propositions: (1) The evidence is not sufficient to support the verdict of the jury, and (2) Dr. Robinson was not defendant's agent.

 With regard to the first proposition our concern is not whether there was a preponderance of the evidence in favor of plaintiff, but whether there was substantial evidence to support the verdict. And on appeal the evidence must be considered in the light most favorable to the plaintiff, who was the prevailing party before the jury. Dr. Robinson died before the case came to trial. The evidence of plaintiff and his wife as to what Dr. Robinson stated in their presence was not contradicted. Other agents of defendant were witnesses and they denied making the statements attributed to them by plaintiff. The jury and the trial court heard the testimony of defendant's witnesses and of plaintiff and his wife and, in the light of the verdict, we must conclude that the jury resolved questions of conflict of testimony and credibility of witnesses in favor of the plaintiff; and the reasonableness of the jury's verdict is vouched for by the refusal of the trial court to direct a verdict in favor of defendant at the close of all the evidence and by the court's overruling of defendant's motion for a new trial.

 If conflicts in testimony and questions of credibility are resolved in favor of the testimony offered by the plaintiff, we must conclude that there was substantial evidence to support an inference of fact that Dr. Robinson and other persons, acknowledged to be agents of defendant, made false representations which were intended to deceive plaintiff and prevent his filing a claim for compensation within the statutory period. Defendant asserts that there is no evidence that the other agents knew of Dr. Robinson's fraud. But assuming that they made the misrepresentations charged, it is a reasonable inference that they were intended to produce the same result as the alleged fraudulent misrepresentations of Dr. Robinson, and they were concurrent with them. The safety director told plaintiff that he had arthritis, and the statements of the different agents were such as to justify the trial court's sending to, the jury the question of whether or not the doctor's misrepresentations and the misrepresentations of acknowledged agents of defendant concurred accidently or were a part of a concerted plan to deceive and defraud the plaintiff. And if we assume that the misrepresentations of persons other than Dr. Robinson were innocently made, their reasonable effect upon the plaintiff was such as to clearly justify the plaintiff's relying upon the misrepresentations of Robinson.

 But defendant contends that it was not bound by fraudulent representations of Robinson and advances as a general rule of law the proposition that a physician in treating and diagnosing cases is an independent contractor and not an agent of one who has employed him to treat another. As a general proposition the foregoing is true, as well as the related rule that an action based upon negligence or unskilfulness of a physician, who has been engaged by one person to treat another, cannot be maintained against the employing person unless he is guilty of negligence in the selection of the physician. The justification for the foregoing is usually stated to be that physicians "are engaged on the understanding that they are to 'exercise their profession to the best of their abilities according to their own discretion; but in exercising it they are in no way under his (the employer's)

orders or bound to obey his directions'." [2]

But the facts of the instant case do not bring it within the foregoing rule. The instant case does not involve mere negligence of a doctor in the performance of his professional duty, but involves his fraudulent misrepresentations to one to whom the doctor, as a representative of the defendant, owed the duty of disclosing the truth. It was within the scope of the employment of the doctor to protect the rights of the plaintiff under the Indiana Workmen's Compensation Law, insofar as those rights were affected by injuries received by the plaintiff in the course of his employment by the defendant company. Under the Indiana Workmen's Compensation Act the defendant was obligated to furnish the services of a physician for at least the first thirty days after an injury (by amendment in 1937 the period has been extended to ninety days, Laws Ind.1937, c. 214) and during the whole or any part of the remainder of the period of disability or impairment resulting from the injury the employer may continue to furnish such medical treatment, and a refusal of the employee to accept such services, when so provided by the employer, "shall bar the employee from all compensation during the period of such refusal." [3] The protection afforded the employer and its insurance carrier by having the employer's company doctor in charge of employees who have suffered injury in the course of employment is obvious; and since the employee, for all practical purposes, is required to accept such services in order to protect his claim for compensation, it follows that the employer and the company doctor, as a representative of the employer, owe a duty to an injured employee to protect the employee's interests in respect to his claim for compensation. Consequently, when making representations to an injured employee respecting his physical condition the doctor is acting within the scope of his employment and performing a duty of the employer; and false representations are imputed to the employer under the law of respondeat superior. The test is not whether the doctor was specifically authorized to make fraudulent representations, but whether the false representations were made within the scope of his employment. [4] It is rarely true that an agent is authorized to perform an act for his principal in a wrongful manner to the injury of a third person. A garage employee is not authorized to smoke cigarettes while filling the gasoline tank of a customer's automobile; but if he does so and a resulting explosion damages the customer's automobile the employer is responsible.

We conclude that there was substantial evidence to support a finding that Dr. Robinson made the false and fraudulent representations attributed to him by plaintiff and that such statements were made for the purpose of deceiving the plaintiff in respect to his true condition and to prevent his filing a claim for compensation under the Workmen's Compensation Act of Indiana; and we further conclude that the evidence justified a finding that the plaintiff did lose his compensation claim as a result of justifiable reliance upon the fraudulent representations of Dr. Robinson and other persons who were employees of defendant company. Also we are of the opinion that under the facts of the case the misrepresentations of Robinson were made while acting in his representative capacity and were imputable to the defendant company.

The judgment of the District Court is affirmed.

---

[2] 19 A.L.R. 1183; Pittsburgh etc. Ry. Co. v. Sullivan, 141 Ind. 83, 40 N.E. 138, 27 L.R.A. 840, 50 Am.St.Rep. 313.

[3] Burns' Indiana Statutes Ann., 1933, Vol. 8, Sec. 40-1225.

[4] Bailey v. London Guarantee & Accident Co., 72 Ind.App. 84, 121 N.E. 128; Kitchen v. Miller Bros. Co., 115 Pa. Super. 141, 174 A. 919; Estes v. Hartford Acc. & Ind. Co., Tex.Civ.App., 46 S.W.2d 413.