## GEO. D. HORNING, Inc., v. McALEENAN et al.

### No. 5343.

Circuit Court of Appeals, Fourth Circuit.

May 12, 1945.

---

Frank L. Ball, of Arlington, Va., and Rudolph H. Yeatman and Joseph A. Rafferty, both of Washington, D. C., for appellant.

John Paul Jones, of Arlington, Va., James V. Connelly, of New York City, and Loring M. Black and Harvey L. Rabbitt, both of Washington, D. C., for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This civil action was brought in the court below by the appellees, as plaintiffs, against the appellant, as defendant, to recover the sum of $17,000 loaned by the plaintiffs on July 8, 1941. There is very little dispute as to the salient facts.

Plaintiffs are co-partners engaged in the pawnbroking business in New York City. George D. Horning, Inc. (herein referred to as defendant) is engaged in the pawnbroking business in Arlington County, Virginia. Defendant is a family corporation, and at the time of the events in question its affairs were largely under the management of James B. Horning (hereinafter called Horning), assisted by Harold L. Hoffman who was "in charge when James B. Horning was not there."

In 1935 or 1936 one Margaret Boyle became a customer of defendant. Horning first became acquainted with her at that time. Mrs. Boyle was always considered by Horning and Hoffman to be a "good customer". She frequently borrowed money from defendant on pledges of jewelry. During the first six months of 1941, particularly after March, the loans increased, both in frequency and amount.

In the latter part of June, 1941, Mrs. Boyle sought further loans from the defendant, but, in accordance with a policy adopted by defendant's board of directors in the early part of June, limiting to $25,-000 the loans to any one individual, Hoffman informed Mrs. Boyle that defendant was unable to grant her any further loans.

Uncontradicted testimony shows that Hoffman suggested that Mrs. Boyle go to

New York to obtain a loan. She asked Hoffman to accompany her to New York but was told that he could not go without Horning's permission. At, or about, this time temporary loans, aggregating $4,200 were made by defendant to Mrs. Boyle on pledges of a diamond bracelet and clip combination piece and a star sapphire ring "to tide her over until she could get a further loan on the jewelry we did not want to take."

Horning granted Hoffman permission to go to New York and presented him with the following letter of introduction:

"July 8, 1941

"To Whom It May Concern:

"This letter will introduce, Mr. Harold L. Hoffman, who is in our employ and is authorized by us to place in pawn for one of our customers, a Mrs. M. Boyle of Washington, D. C., several pieces of diamond jewelry.

"George D. Horning, Inc.,
"by Jas. B. Horning."

Hoffman insured in the name of Mrs. Boyle, the bracelet and clip combination, and sapphire ring, on which defendant held a lien, and a diamond necklace which had been left with defendant by Mrs. Boyle for safekeeping, and carried all this jewelry to New York where he met Mrs. Boyle on July 8, 1941.

Hoffman and Mrs. Boyle went to a firm known as Stern Brothers and sought a loan of $20,000 on the three pieces of jewelry. They were informed that Stern Brothers were not making large loans of that character and it was suggested that they go to "McAleenans" (plaintiffs' firm name).

Later the same day, Hoffman and Mrs. Boyle went to "McAleenans" and Hoffman met H. Alvin McAleenan (hereinafter called McAleenan). Hoffman introduced Mrs. Boyle and presented McAleenan with the letter from Horning. He explained to McAleenan that the purpose of their visit was to obtain a loan of $20,000 for Mrs. Boyle and produced the pieces of jewelry. Hoffman told McAleenan that Mrs. Boyle was the owner of the jewelry, was a very prominent woman in Washington and had done business with defendant for many years. (Hoffman denied that he made any statement with reference to ownership.) McAleenan read the letter and told Hoffman that he wanted to verify the facts therein stated and McAleenan placed a person to person phone call for Horning at Arlington, Virginia. McAleenan's testimony with reference to the telephone conversation is as follows:

"I said: Mr. Horning, your manager, Mr. Hoffman, is in my office accompanied by a Mrs. M. Boyle. He has presented a letter to me and stated that he would require a loan of twenty thousand dollars. I would like to know, Mr. Horning, is Mrs. Boyle O. K.

"He assured me that she was all right; that she was a very prominent woman in Washington and that he personally had done business with her over a number of years.

*       *       *       *       *

"I thanked him for his courtesy in sending the business and hung up."

Plaintiff's appraiser estimated the loan value of the jewelry at $15,000. McAleenan, however, granted a loan of $17,000. Further, he reduced the interest rate from 18% to 14% when informed by Hoffman that defendant had never charged Mrs. Boyle more that 12% per year. A check was drawn to the order of Horning & Company but Hoffman requested that the check be drawn to Mrs. Boyle since the loan was being made to her. McAleenan testified that Hoffman turned to Mrs. Boyle and said: "It's six of one and half a dozen of the other; you can endorse the check over to us." (Hoffman vigorously denied making this statement.) Subsequently, a second check was drawn to the order of "Mrs. M. Boyle".

When the pawn ticket was prepared, Mrs. Boyle was required to sign this as pledgor, and when Hoffman stated that Mrs. Boyle might like to retrieve the articles individually, the loan was broken down on the pawn ticket, and different loan values were placed opposite the listing of each article.

After this loan was made, in accordance with a request made by Mrs. Boyle, Horning sent other jewelry that had been placed by her with defendant, to New York so that she might secure larger loans.

On July 9, 1941, Hoffman and Mrs. Boyle sought an additional loan of $15,000 from plaintiffs on jewelry sent by Horning, but when only $12,500 was offered "they asked for time to think it over." On July 11, Mrs. Boyle called McAleenan; thanked him for his courtesy and told him that she had made other arrangements and would not require the additional loan.

Hoffman took plaintiffs' check, together with the checks received from other firms for pledges and sale of jewelry, all unendorsed and returned to Arlington. On July 11, 1941, Mrs. Boyle endorsed the checks, aggregating $54,000, and turned them over to defendant who deducted the amount of loans and interest due defendant from Mrs. Boyle (including the expenses of Hoffman's trip to New York) and turned over the balance over and above these items to her in cash.

Subsequent events disclosed the fact that the jewelry pawned by Mrs. Boyle with defendant and plaintiffs had been placed in her possession on memorandum for the purpose of sale, but she, in violation of the terms of the memorandum, and without holding title, pawned the jewelry and appropriated the proceeds.

On July 18, 1941, after a telephone conversation with one Blauweiss, who had transferred the jewelry to Mrs. Boyle, Horning became suspicious, and, by telephone asked McAleenan to place a "stop" on the jewelry. On July 21, 1941, Horning again called McAleenan and asked the amount of interest due on the loan. McAleenan informed him that there would be no interest; that if he would send the $17,-000 and the pawn ticket, he would surrender the jewelry. That same day Hoffman returned to New York with a check for $17,000 for plaintiffs, but when he discovered he was unable to secure the pawn ticket from Mrs. Boyle or Blauweiss, he returned to Arlington, on Horning's order.

Subsequently, a police stop order was placed on the jewelry in the hands of the plaintiffs, prohibiting its surrender to anyone. Later, pursuant to a judgment of the New York courts, plaintiffs were required to turn the jewelry over to those claiming ownership, and to pay interest charges.

Plaintiffs, through counsel, demanded return of the monies loaned and when defendant denied liability and refused to make payment, the present suit was instituted.

The amended complaint contained nine causes of action, five of which (Nos. 1, 2, 3, 4 and 7) were, basically, actions for fraud and deceit. Before submission of the case to the jury, these five were withdrawn.

The remaining four causes of action sounded in contract and were as follows:

5. For money borrowed jointly by the defendant and one Mrs. Margaret Boyle.

6. For money lent to the defendant.

8. For money paid to the defendant.

9. For money, property of the plaintiffs, had and received by the defendant.

At the close of the plaintiffs' case, defendant moved the Court to strike all of plaintiffs' testimony with reference to an alleged custom in the trade as to the meaning of the expression "O. K.", and for a directed verdict. These motions were denied. At the close of all the evidence, defendant renewed its original motions and moved for a directed verdict, severally as to the respective causes of action. These motions were denied, and the jury returned a verdict in favor of the plaintiffs. Defendant then made motions for judgment notwithstanding the verdict, and in the alternative, for a new trial.

In his charge to the jury the District Judge gave the following instructions:

"The jury are instructed that if you believe from the evidence that Mrs. Margaret Boyle was acting for the benefit or in the furtherance of the interests of George D. Horning, Inc., and obtained the loan from the plaintiffs for it as the agent of the defendant, George D. Horning, Inc., in negotiating the loan with McAleenans, and that the defendant, George D. Horning, Inc., ratified the act of the said Mrs. Margaret Boyle in negotiating the said loan by acceptance of the proceeds and benefits thereof, or otherwise, and the said loan has not been repaid by George D. Horning, Inc., to the plaintiffs, and the plaintiffs loaned the money to the defendant, then your verdict shall be for the plaintiffs.

"The jury also are instructed that:

"If you believe from the evidence that Mrs. Margaret Boyle and the defendant, George D. Horning, Inc., acting by and through Harold Hoffman, were engaged in the promotion and furtherance of their mutual and joint interests when they obtained the loan from the plaintiffs on the security offered to the plaintiffs for pawn, then you may find that the money was borrowed by them from the plaintiffs jointly and that the loan was made by the plaintiffs to them jointly.

"The Court further instructs the jury that if you so find from the evidence, then the defendant, George D. Horning, Inc., is directly liable to the plaintiffs for the whole debt and your verdict shall be for the plaintiffs."

Then, "If you believe from the evidence that the loan of $17,000.00 was made by

McAleenans to George D. Horning, Inc., with the understanding on the part of both parties that George D. Horning, Inc., was the debtor and obligated to them, which money is not repaid to McAleenans, then your verdict shall be for the plaintiffs."

We think that the District Court erred in refusing defendant's motion for judgment notwithstanding the verdict.

We are fully aware that in the case before us the evidence must be construed most favorably in support of the verdict, and that any conflict must be resolved in its favor, Woodburn v. Standard Forgings Corp. 7 Cir., 112 F.2d 271, 129 A.L.R. 337; Egan Chevrolet Co. v. Bruner, 8 Cir., 102 F.2d 373, 122 A.L.R. 987. However, it is vigorously contended by defendant that there is no substantial evidence here to support the verdict, and with this we are constrained to agree. We are not here confronted, as plaintiffs affirmatively contend, with a question of credibility of the witnesses. Though we resolve every tenable inference in favor of the plaintiffs' case, we still believe that there was insufficient evidence to sustain the verdict found.

We are not impressed with the contention of plaintiffs' counsel that the jury's verdict should be sustained because it was a general one, since we find no sufficient evidence to support any of the causes of action upon which plaintiffs rely. Nor do we find merit here in the argument that since the verdict was approved by the trial judge it should not be disturbed on appeal. It is clear that should it be found on appeal that the evidence was insufficient, the appellate court may reverse with a direction to enter judgment notwithstanding the verdict. Baltimore & Carolina Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636; Carpenter v. Durell, 6 Cir., 90 F.2d 57.

While it is true that the introduction of evidence by the defendant after denial of a motion for a directed verdict at the close of the plaintiffs' case was a waiver of that motion, Union Pac. Ry. v. Calaghan, 161 U.S. 91, 16 S.Ct. 493, 40 L. Ed. 628; Accident Ins. Co. v. Crandal, 120 U.S. 527, 7 S.Ct. 685, 30 L.Ed. 740; Detroit United Ry. Co. v. Nichols, 6 Cir., 165 F. 289, we think the plaintiffs in this case were, on the evidence, in no stronger position at the close of all of the evidence. The motion for directed verdict was renewed at the close of all the evidence and, we think, should have been granted.

When we consider the evidence of the entire record in the light of the causes of action and the instructions to the jury, it is, we think, clearly apparent that defendant's motion should have been granted.

Under the fifth cause of action it is alleged that the monies were borrowed jointly by defendant and one Mrs. Margaret Boyle. In this connection, not only do we find no supporting evidence, but the clear and uncontradicted testimony of McAleenan is patently inconsistent with any such theory. No other tenable conclusion, we think, can be reached than that McAleenan well understood that the loan was being made to Mrs. Boyle and neither to defendant singly nor defendant jointly with Mrs. Boyle. In his testimony relating to his telephone conversation with Horning, he stated: "I thanked him for his courtesy in *sending the business* and hung up." (Italics ours.) Further, he testified: "Mr. Hoffman said that Mrs. Boyle (not defendant) might like to retrieve the articles individually and if I would break it down for her."

Nor do we view it as unimportant that when Kelly, plaintiffs' employee, asked if the pawn ticket should be made out in the name of Horning, McAleenan replied: "No. Make that out in the name of Mrs. Boyle." In this connection it may be noted that it was Mrs. Boyle (not Hoffman for defendant) who signed the stub, thereby agreeing to be bound by all the conditions thereon.

Much stress is placed by plaintiffs on the letter of introduction presented to McAleenan by Hoffman, as supporting the theory that the loan was being made to defendant or to defendant and Mrs. Boyle jointly. While we agree that this letter might well be termed a classical example of ineptness, we think the following testimony of McAleenan clearly shows that there was no misunderstanding on his part.

"Q. Did not the letter itself say: 'He is authorized to place in pawn for one of our customers?' You knew from that letter that it was Mrs. Boyle who was seeking a loan, did you? A. Surely.

"Q. And not Horning? A. I imagine that was self-evident.

"Q. And you so understood it at the time? A. That is right."

■ Furthermore, we think this evidence clearly negatives any theory of agency on which the jury was instructed. Since there is not a scintilla of evidence pointing to an express agency, plaintiffs must necessarily rely upon the theory of estoppel to establish an agency here. The doctrine can apply only in those cases in which the element of reliance is present. American National Bank v. Bartlett, 10 Cir., 40 F.2d 21. The above testimony refutes any such reliance. If McAleenan were in doubt as to the identity of the borrower, by virtue of the ambiguous letter, it is certainly reasonable to assume that this question would have been mentioned by McAleenan in his telephone conversation with Horning.

The sixth and seventh causes of action seek recovery of money lent, and money paid to the defendant, respectively. These causes of action fail for the same reasons stated in reference to the fifth cause of action. Further, it was made clear to McAleenan, when the first check was drawn, that the money was being lent to Mrs. Boyle. Such evidence is plainly inconsistent with any promise by defendant to pay, implied in fact. There was, we think, no evidence on which the Court might instruct the jury with reference to an understanding on the part of both parties that defendant was the debtor.

In his charge to the jury the District Judge explained that plaintiffs had elected to rely on the theory that the money was procured in New York for the purpose of paying off loans made by defendant to Mrs. Boyle, and were, in fact, made for the benefit of defendant. (It was so alleged in the ninth cause of action.) Under the Court's explanation, the jury might well have inferred that Mrs. Boyle's payment to defendant rendered it liable. We agree with the judge's statement to counsel that if the loan was made to Mrs. Boyle, (and we think the evidence shows nothing else) and she turned the proceeds over to defendant, there was no liability on the part of the defendant to repay it to plaintiffs.

■■ We find no merit in the contention that defendant is liable on the theory of a joint enterprise on the part of defendant and Mrs. Boyle. The well settled definition of a joint adventure expressly encompasses the element of profit seeking. This element is implicit in the very nature of commercial undertakings. See Tompkins v. Commissioner, 4 Cir., 97 F.2d 396;

Fletcher v. Fletcher, 206 Mich. 153, 172 N.W. 436; 33 C.J. 841. It has been expressly termed a "commercial enterprise by several persons jointly." Joring v. Harriss, 2 Cir., 292 F. 974, 978. Plaintiffs argue that the element of joint adventure was present in that Mrs. Boyle and defendant were seeking the loan together in order that Mrs. Boyle might obtain additional money on the jewelry and that defendant might be relieved of the possibility of loss on loans already made. If there were any substantial evidence that defendant knew of the fraudulent character of the transactions in which Mrs. Boyle was engaged, there would be force in this position. There is no evidence of this, however, and evidence supporting no more than a conclusion that Mrs. Boyle wanted more money on her jewelry and that defendant was unwilling to lend her more but was willing, or even anxious, to retire its loans, if she could obtain more from others, and worked with her to that end, is not sufficient to establish a joint enterprise. A lender who assists a borrower in obtaining money to pay off his loan is not engaged in a joint enterprise with the borrower because of that fact.

As to the purpose of making the loan, the light cast by the factual background obviously indicates that purpose. Mrs. Boyle, like many who run afoul of the law, was living beyond her means. She was interested in raising the fullest amount the market would allow on jewelry which it is patent she had small concern about redeeming. When confronted by the limitation on loans adopted by the defendant, it became necessary to seek money elsewhere.

Much reliance is placed by plaintiffs on the fact that Hoffman accompanied Mrs. Boyle in her search for loans. But in the absence of a clear showing of fraud, since this was at Mrs. Boyle's expense, and on her request, Hoffman's trip to New York does not greatly help plaintiff's case.

■ In the absence of proof that the defendant had knowledge, at the time plaintiffs made the loan to Mrs. Boyle, that she was without authority to pledge the jewelry, it is not reasonable to infer that Horning granted permission to Mrs. Boyle to secure larger loans for defendant's own benefit. Nor is it reasonable to assume that a pledgee, holding jewelry of a market value far in excess of its loan value, as was defendant, (It is not only good business from the pawnbroker's view, but a matter of common knowledge, that loans on

pledges are restricted to limits safely within the market or sale value of the pledge) would, for its own benefit, give up its right to 12% interest and in turn pledge the same jewelry with another for a loan, thereby obligating itself to pay 14% interest.

We cannot close our judicial eyes to the coldblooded business of the market place, disregarding entirely Mills' "economic man", in favor of tenuous inferences in support of which there is no clear legal proof.

Plaintiffs strenuously urge that since they bring their claim in assumpsit, the liability on the part of the defendant exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention. While such a liability may be implied when the facts warrant it, no such facts are in evidence here and the burden rests upon the plaintiff to show them. This the plaintiff has failed to do. Cf. Second National Bank v. M. Samuel & Sons, 2 Cir., 12 F.2d 963, 53 A.L.R. 49. See also "The History of Assumpsit" (Ames) 2 Har.L.Rev.

The judgment of the District Court is reversed and the cause remanded to that Court with direction that judgment be entered for the defendant.

Reversed and remanded.